John H. CHRISTIAN, Plaintiff-Appellant (87-6078), Plaintiff-Appellee (87-6252),

v.

Delzinna S. BELCHER, Raymond Ike Hall, Elijah Buell, Eldon Fox, Orville Wynn, Abe Bailey, Jr., Defendants-Appellees (87-6078), Defendants-Appellants (87-6252).

Nos. 87-6078, 87-6252.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 18, 1988.

Decided Oct. 23, 1989.

William D. Stark, Jr., argued, Barbourville, Ky., for John H. Christian.

Sherry Brashear, argued, Eugene Goss, and Mark David Goss, Alan C. Wagers, Harlan, Ky., for Delzinna S. Belcher, et al.

Before JONES and RYAN, Circuit Judges, and HULL, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant appeals from the district court's grant of summary judgment to defendants-appellees in this employment termination action filed pursuant to 42 U.S.C. § 1983 (1982). Defendants-appellees cross-appeal from the denial of their request for attorney's fees under 42 U.S.C. § 1988 (1982). For the reasons that follow, we reverse in part the district court's grant of summary judgment, affirm the denial of attorney's fees, and remand for further proceedings consistent with this opinion.

I.

On October 11, 1984, plaintiff-appellant John H. Christian was appointed Harlan County (Kentucky) Flood Plain Administrator and Building Inspector ("FPA"). Christian, who is a Republican, was nominated for this position by then Harlan County Judge Executive, Hugh Hall, who is also a Republican. Christian's nomination was approved by the Harlan County Fiscal Court.

Christian's primary responsibility as FPA was to administer the County's Flood Plain Prevention Ordinance ("Ordinance") which was enacted by the Fiscal Court in order to comply with the federal flood insurance requirements contained in 42 U.S.C. § 4001 et seq. (1982). The stated purposes of the Ordinance are to restrict or prohibit land uses that are dangerous to health, safety and property due to floods; to regulate construction in areas vulnerable to floods; to control the alteration of natural flood plains; to control the filing, grading and dredging of streams; and to prevent or regulate construction that might unnaturally divert flood waters or increase flood

_____

* The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

hazards. Article 4, Section A of the Ordinance designates the Judge Executive or her designee as the Harlan County FPA, and states that the FPA's duties include: reviewing all development permits to insure compliance with the Ordinance; advising permit holders of other pertinent state and federal land development requirements; notifying adjacent communities and state agencies of planned alterations or relocations of water courses; assuring the proper maintenance of altered or relocated water courses; verifying and recording flood elevations of new or improved structures, and the elevations to which they have been flood-proofed; obtaining floodproof certification from professional engineers or architects; interpreting flood area boundaries promulgated by the federal government; obtaining and utilizing base flood elevation data; and maintaining for inspection all public records relating to the Ordinance. The record indicates that Christian satisfactorily performed these duties from October 1984 until January 1986.

In November 1985, an election was held for Harlan County Judge Executive. Christian's father-in-law ran as the Republican candidate for this office, and Christian actively and vigorously campaigned for him. Defendant-appellee Delzinna Belcher ran as the Democratic candidate. Belcher won the election and she assumed office as of January 1986. Prior to taking office, however, Belcher met with the Fiscal Court magistrates and discussed various changes that she planned to make in the county's administration. At this meeting, Belcher stated that for "personal and political" reasons, she did not intend to renominate Christian as FPA. Belcher stated that she wanted to nominate persons with whom she felt comfortable and had a good working relationship. She also stated her belief that, upon a change in administration, Kentucky law gave the newly elected Judge Executive the prerogative not to renominate county employees. On January 3, 1986, Belcher submitted a list of fifty-four renominated county employees to the Fiscal Court. The Fiscal Court subsequently approved the list submitted by Belcher. Christian was one of only two persons who were not renominated.[1]

When Christian learned that he had not been renominated his attorney sent a letter to the Judge Executive and Fiscal Court requesting a hearing on the matter. Shortly thereafter, the Harlan County Attorney sent Christian's attorney a letter denying his request. The letter stated that since Christian's employment *automatically terminated at the end of the previous administration, the Judge Executive* and Fiscal Court had determined that he was not entitled to a hearing. Christian then filed the instant suit against Belcher and the five Fiscal Court magistrates ("magistrates"). In his complaint, Christian alleged that he was terminated from county employment solely because he had supported Belcher's opponent in the November 1985 election. Christian alleged that since his termination was designed to punish him for his political beliefs and expressions, defendants had violated the first and fourteenth amendments to the United States Constitution. In addition, Christian asserted that defendants' actions in denying him a hearing violated the due process clause of the fourteenth amendment.

On March 27, 1987, the magistrates filed their motion for summary judgment. They asserted that under Kentucky law, Christian's employment automatically terminated at the end of the previous administration, and that he could be reappointed only by the new Judge Executive. Since they had no authority to renominate or reappoint Christian, the magistrates argued that they did not cause his alleged injuries and, therefore, were entitled to judgment as a matter of law. Belcher filed her separate motion for summary judgment on March 31, 1987. Belcher asserted that because Christian's employment terminated automatically at the end of the previous administration, she did not *dismiss* him

---

[1]. The record shows that other employee who was not renominated indicated to Belcher that she did not wish to continue employment with the county. *See* J. App. at 180 (Deposition Testimony of Connie Boggs).

from his position but instead declined to *rehire* him for this position. In addition, Belcher argued that she could not depend on Christian's "faithful adherence" to his job responsibilities because of his opposition to her in the election campaign. Finally, Belcher contended that under the first and fourteenth amendments, she was entitled not to rehire Christian—even for political reasons—because the FPA job was a "policymaking" position.

In July 1987, the district court entered an opinion and order granting defendants' motions for summary judgment. The district court held that under Kentucky law, county employment terminated at the end of each executive administration, and that the incoming Judge Executive had the authority to nominate all county employees for her term of office. The district court further held that the Fiscal Court had no authority to nominate or appoint county employees on its own initiative, but rather had to accept or reject the Judge Executive's nominations. Thus, reasoning that the magistrates "took no action under color of state law to deprive [Christian] of his rights, privileges or immunities secured by the Constitution," the district court granted their motion on the first amendment claim. J.App. at 453. Addressing the first amendment claim against Belcher, the district court stated:

> It is quite possible, considering some of the objectives of the ordinance, such as to *minimize expenditure of public money for costly flood control* projects and to help maintain a stable tax base by providing for the sound use and development of flood prone areas ... that the administrator and the judge/executive working side-by-side to accomplish these objectives would have to make policy decisions. As such, political differences could have a negative effect on performance of these tasks. Consequently, party affiliation may be considered along with other factors in making hiring judgments regarding the job of plain administrator and building inspector. Accordingly, defendant Belcher's decision not to reappointment [Christian] to his position for, *inter alia*, political reasons does not

constitute a deprivation of [his] civil rights.

J.App. at 455. Finally, with respect to Christian's procedural due process claim, the district court held that he was not entitled to a hearing because his term of employment *automatically* expired at the end of the previous administration. This fact apparently led the court to find that Christian's termination did not implicate any constitutionally protected interests.

On August 25, 1987, defendants filed a motion pursuant to 42 U.S.C. § 1988 seeking to have their attorney's fees assessed against Christian. The district court subsequently denied that motion, stating that since it was arguable that the FPA position was not a "policymaking" position, Christian's lawsuit was not "frivolous, unreasonable, or without foundation." J.App. at 547. Christian has appealed from the granting of defendants' summary judgment motions, and the magistrates have cross-appealed from the denial of their request for attorney's fees.

## II.

### A.

Summary judgment is properly granted where the parties' dispute presents no genuine issue of material fact. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must view all facts and inferences in the light most favorable to the non-moving party. *S.E.C. v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

## B.

We first address Christian's contention that the district court erred in granting summary judgment for the magistrates on his first amendment claim. Christian argues that the district court erred in holding that the magistrates had no authority under Kentucky law to appoint him to his former position. He further contends that, even if the district court correctly interpreted the relevant Kentucky statute on this point, this court should not allow a state to use such a mechanism to evade federal constitutional requirements.

■ Section 1983 provides, in pertinent part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has made clear that this statute is designed to guard against the " '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law....' " *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). Thus, before a defendant may be held liable under section 1983, that defendant must first *possess* power by virtue of state law, then *misuse* that power in a way that violates federal constitutional rights.

■ In the instant case, the powers of the Fiscal Court and Judge Executive regarding the hiring and removal of county employees are set forth in Kentucky Revised Statutes Annotated § 67.710 (Baldwin 1988), which provides, in relevant part, that:

The county judge/executive shall be the chief executive of the county and shall have all the powers and perform all the duties of an executive and administrative nature vested in, or imposed upon, the county or its fiscal court by law ... and such additional powers as granted by the fiscal court.... His responsibilities shall include, but are not limited to, the following:

(7) Exercise *with the approval of the fiscal court* the authority to appoint, supervise, suspend, and remove county personnel (unless otherwise provided by state law); and

(8) *With the approval of the fiscal court,* make appointments to or remove members from such boards, commissions, and designated administrative positions as the fiscal court, charter, law or ordinance may create. The requirement of fiscal court approval must be designated as such in the county administrative code or the county charter.

(Emphasis added). While the position of Harlan County FPA might arguably be considered a "designated administrative position" within the meaning of section 67.-710(8), the parties have not raised the applicability of that provision. We will therefore confine our discussion to whether, pursuant to section 67.710(7), the magistrates could have appointed Christian to county employment on their own initiative.

Neither of the parties has cited any Kentucky case law interpreting section 67.-710(7). However, the plain language of the statute indicates that the Fiscal Court has no general authority to nominate or appoint county employees. The statute grants the judge executive the *"authority* to appoint, supervise, suspend, and remove county personnel,"* subject only to the *"approval* of the fiscal court" (Emphasis added). This language clearly contemplates that, in general, only the Judge Executive may nominate persons for county employment, and that the Fiscal Court must either accept or reject those nominations. Moreover, as noted earlier, the district court expressly held that under Kentucky law, the terms of all county employees expire automatically at the end of each executive administration, and that "[a]fter Belcher was elected, [Christian] had to be reappointed to the job of [FPA]." J.App. at 452. Since we have

found no Kentucky authority to the contrary, we defer to the experienced district judge's interpretation of the law of the state in which he sits. *See Deckebach v. La Vida Charters, Inc. of Florida,* 867 F.2d 278, 285 n. 4 (6th Cir.1989). Finally, we reject Christian's contention that this interpretation of Kentucky law will allow state employers to evade constitutional requirements concerning politically motivated job terminations. Section 67.710(7) does not delegate decisionmaking authority to a judgment-proof, non-state entity, *see, e.g., Gilmore v. City of Montgomery,* 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974), but rather places that authority with one state entity instead of another. Moreover, as discussed below, since decisions not to "reappoint" state employees are treated the same as job "terminations" in this context, *see Branti v. Finkel,* 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574 (1980), our decision does not encourage politically-based job terminations under the guise of automatic dismissals and failures to reappoint. In sum, because Kentucky law did not provide the magistrates with the authority to reappoint Christian to county employment, we hold that the district court properly granted summary judgment for the magistrates on Christian's first amendment claim.

### C.

The next question that we address is whether the district court properly granted summary judgment for Belcher on the first amendment claim. Our analysis of this issue begins with the Supreme Court's decisions in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In *Elrod v. Burns,* the Court addressed whether an individual could be terminated from government employment solely because of his political party affiliation. In answering this question, the Court drew a distinction between "policymaking" and "nonpolicymaking" employees, and held that "a non-

policymaking, nonconfidential government employee can [not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690 (Stewart, J., concurring).[2] In *Branti v. Finkel,* however, the Court abandoned the labels of "policymaker" and "confidential employee," instead stating that the relevant issue is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office involved." 445 U.S. at 518, 100 S.Ct. at 1295. Moreover, unless political loyalty is "*essential* to the discharge of the employee's governmental responsibilities," then under the *Branti* analysis, the patronage dismissal of that employee does not comport with constitutional standards. *Id.* (emphasis added). Accordingly, once the employee shows that he was terminated from government employment solely because of his political expression or association, *Branti* imposes a heavy burden upon the employer to justify that action.

In *Avery v. Jennings,* 786 F.2d 233 (6th Cir.), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), this court applied the framework laid down in *Elrod* and *Branti,* and held that an informal "word-of-mouth" hiring system that had a disparate impact upon non-Republicans did not violate the first and fourteenth amendments. In so holding, we distinguished between "normal" patronage *hiring* systems and strict political affiliation *discharge* cases such as *Elrod* and *Branti. Id.* at 237. Similarly, in *Messer v. Curci,* 881 F.2d 219 (6th Cir.1989) (en banc), we noted a "sharp distinction" between cases where the plaintiff was dismissed from state employment, and those where the plaintiff simply was not hired for political reasons. We held in *Messer* that an applicant for seasonal government employment did not state a claim for violation of his first amendment rights by alleging that preference was given to other applicants because of their political activities.

---

**2.** Justice Stewart's limiting concurrence provided the fifth vote for the result in *Elrod,* and

therefore was the controlling opinion in that case.

■ Although in the instant case, Christian's employment terminated automatically under state law, such an automatic termination from otherwise continuous government employment is properly viewed as a constructive discharge in this legal context. *See Branti*, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6; *Messer v. Curci*, 881 F.2d at 221. Therefore, since the case at hand is properly regarded as a "termination" case rather than a "hiring" case, Belcher was constitutionally prohibited from dismissing Christian solely because of his political association and/or expression. In examining the record in this case, we note that Belcher admitted that her reasons for not renominating Christian were "personal and political." Moreover, Belcher renominated all but two persons from the previous administration, and the record indicates that Christian was the only county employee in ten years not to be reappointed upon a change in administration. *See* J.App. at 100 (Deposition of Fiscal Court magistrate, defendant Elijah Buell). In light of this evidence, we believe that there is a genuine issue of material fact as to whether Christian's termination was based solely upon his political expression and association. We also believe that there is a genuine issue of material fact as to whether the duties of the Harlan County FPA were such as to make political loyalty an "appropriate" job requirement. The district court held that since the FPA might have to make policy decisions to accomplish the objectives of the Ordinance, Christian's termination was permissible under *Elrod* and *Branti*. We disagree. For however *possible* it may be that the FPA would have to make policy decisions, Belcher simply has not carried her burden of demonstrating that political loyalty is "*essential* to the discharge of [the FPA's] governmental responsibilities." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295 (emphasis added). Therefore, because it is not clear whether Belcher dismissed Christian solely because of his political association and/or expression, and because Belcher has not demonstrated that party affiliation is an "appropriate" requirement for the FPA position, we reverse the grant of summary judgment for Belcher on the first amendment claim.

### D.

We next consider Christian's procedural due process claims. Christian asserts that he was deprived of constitutionally protected liberty and property interests when he was terminated from county employment. He thus claims that defendants' failure to grant him a hearing violated the due process clause of the fourteenth amendment.

■ In order to prove a violation of procedural due process, the plaintiff must show that he was deprived of a constitutionally protected liberty or property interest, and that federal due process requirements were not observed. *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1067 (6th Cir.1984). The Supreme Court has held that under certain circumstances, the discharge of a government employee may implicate constitutionally protected interests. For example, where a nontenured state employee shows that he has been stigmatized by the employer's voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer has deprived the employee of a protected *liberty* interest and is required to afford the employee an opportunity to clear his name. *Codd v. Vegler*, 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977); *see also Burkhart v. Randles*, 764 F.2d 1196, 1201 (6th Cir.1985). In order to assert such an interest, however, the employee must allege *in his complaint* that the employer publicly disclosed the alleged reasons for his discharge. *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Western Reserve*, 747 F.2d at 1069. On the other hand, an employee may demonstrate a protected *property* interest in continued employment by showing an express or implied state law basis for that interest. *See Bishop v. Wood*, 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976). For example, the Supreme Court has held that a nontenured state employee may prove such an interest

by showing that the policies *and practices* of the employer justified his legitimate claim of entitlement to continued employment. *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). While proof of such an interest does not entitle the employee to reinstatement, the employer is required to grant the employee's request for a hearing "where he could be informed of the grounds for his nonretention and challenge their sufficiency." *Id.* at 603, 92 S.Ct. at 2700.

█ In the case at hand, Christian did not allege in his complaint that the defendants publicly disclosed false information concerning the reasons for his dismissal, and there is no evidence to this effect in the record. We therefore conclude that the district court properly granted summary judgment for all defendants on Christian's liberty-based due process claim. We believe, however, that Christian *has* raised genuine issues of material fact regarding his *property*-based due process claim. Christian maintains that it was the custom and practice of the Harlan County government to retain all personnel upon a change in administration, and there is evidence in the record to support this assertion. For example, defendant Elijah Buell, who has served as a Fiscal Court magistrate for some ten years, stated that during that time period Christian was the only county employee not to be reappointed to his job upon a change in administration. J.App. at 100. Similarly, Belcher admitted that Christian was the only holdover from the previous administration who wanted to retain his job but was not reappointed. J.App. at 149–54. In light of this evidence, we conclude that Christian has raised a genuine issue of material fact concerning whether he had a legitimate claim of entitlement to continued employment such that defendants' failure to grant him a hearing violated the due process clause of the fourteenth amendment. Accordingly, we reverse the grant of summary judgment to all defendants on Christian's property-based due process claim.

## III.

█ The final issue that we address is whether the district court erred in denying the magistrates' request for attorney's fees under 42 U.S.C. § 1988. The Supreme Court has made clear that attorney's fees may not be awarded against a civil rights plaintiff unless "the plaintiff's action [is] 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' " *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)). An appellate court should not disturb a district court's decision on this issue unless the district court has abused its discretion. *Hamilton v. Daley,* 777 F.2d 1207 (7th Cir.1985).

In the instant case, the district court did not abuse its discretion in denying the magistrates' request in this regard. Given the fact that the Fiscal Court plays a role in the appointment of county employees under Kentucky law, and given the dearth of Kentucky authority delineating the respective powers of the Fiscal Court and Judge Executive under K.R.S. § 67.710(7), we do not believe that Christian's first amendment claim against the magistrates was "frivolous, unreasonable or without foundation." Moreover, since we have reversed the grant of summary judgment to all defendants on Christian's property-based due process claim, we necessarily find that this claim was sufficiently meritorious to avoid an award of attorney's fees. We therefore affirm the district court's judgment on this claim.

## IV.

For the above-stated reasons, we AFFIRM the grant of summary judgment to the magistrates on the first amendment claim; REVERSE the grant of summary judgment to Belcher on that claim; AFFIRM the grant of summary judgment to all defendants on the liberty-based due process claim; REVERSE the grant of summary judgment to all defendants on the property-based due process claim; and AF-

FIRM the denial of attorney's fees. The case is REMANDED to the district court for further proceedings consistent with this opinion.