993 F.2d 1547
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William MINEER, Plaintiff-Appellee,
v.
Jewell CALL, Fleming County Judge/Executive; Magistrate
Gary C. Harmon; Magistrate Andy Cole; Magistrate John
Sims; Magistrate Ronnie Carpenter; Magistrate William
Thompson; Magistrate L.C. Cord, in Their Individual
Capacities, Defendants-Appellants,
Jewell Call, Fleming County Judge/Executive; Magistrate
Gary C. Harmon; Magistrate Andy Cole; Magistrate John
Sims; Magistrate Ronnie Carpenter; Magistrate William
Thompson; Magistrate L.C. Cord, in Their Official
Capacities, Fleming County; Fleming County Fiscal Court;
Flemingsburg, Kentucky, Defendants.
 No. 92-5368.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1993.
 
 1
 Before GUY and RYAN, Circuit Judges, and CHURCHILL, Senior District Judge.*
 
 
 2
 JAMES P. CHURCHILL, Senior District Judge, delivered the opinion of the Court.
 
 
 3
 William Mineer was employed by Fleming County, Kentucky, as road supervisor from 1978 until January 8, 1990 when his employment was effectively terminated by actions of the Fleming County Judge/Executive and/or the Fleming County Fiscal Court.
 
 
 4
 Mineer commenced this lawsuit in the United States District Court for the Eastern District of Kentucky for injunctive relief and damages for constitutional violations pursuant to 42 U.S.C. § 1983. His complaint also includes state law claims.
 
 
 5
 The defendants are Fleming County, the Fleming County Fiscal Court, Jewell Call as Fleming County Judge/Executive in his individual and official capacities, and six named fiscal court magistrates. All of the magistrates are sued in their official capacities as members of the fiscal court. All of them except one, John Sims, are also sued in their individual capacities.
 
 
 6
 It is Mineer's position that the term of his employment was for four years from the second Tuesday of January 1988, and that the termination of his employment without a predeprivation hearing in the middle of his term denied him procedural due process under the Fourteenth Amendment. He further asserts that the actions of the defendants were in retaliation for his political activity in violation of the First Amendment.[1]
 
 
 7
 The plaintiff's state law claims are for violation of Ky.Rev.Stat.Ann. ("K.R.S.") §§ 179.020 and 179.060.
 
 
 8
 From their briefs, it appears that the defendants denied the plaintiff's allegations generally and that the individual defendants also pleaded the affirmative defense of qualified immunity with respect to the federal claims.
 
 
 9
 Following the close of discovery, the defendants filed a motion for summary judgment as to all claims. Call and the five magistrates who were sued in their individual capacities also sought summary judgment on the qualified immunity issue.
 
 
 10
 The District Court granted the magistrates' motion as to "Plaintiff's claims based on his First Amendment and State Law claims for wrongful discharge." In all other respects, the defendants' motion for summary judgment was denied.
 
 
 11
 Call and all six magistrates[2] filed a notice of appeal in their individual capacities from the order denying their motion for summary judgment on the issue of qualified immunity. The individual defendants appeal denial of the summary judgment motion for qualified immunity as a matter of right. Mitchell v. Forsyth, 472 U.S. 511 (1985).
 
 
 12
 The appellants have asked the Court to exercise pendent appellate jurisdiction with respect to other state and federal issues. We decline to do so although we realize that our decision on the qualified immunity issue will impact other issues.
 
 The Relevant Statutes
 
 13
 Kentucky statutes concerning county road supervisors and county judge/executives are central to the issues on appeal.
 
 
 14
 The position of County Road Supervisor is created by statute, K.R.S. § 179.020.
 
 
 15
 The statute directs that if the fiscal court does not provide for a county road engineer, the duties of the county road engineer shall be performed by a county road supervisor who shall be employed by the county judge/executive with the consent of the fiscal court. In order to qualify for the position as a county road supervisor, the candidate must meet the following requirements:
 
 
 16
 (a) He has at least three (3) years' practical road building experience of a nature satisfactory to examining authorities selected by the bureau of highways for the Commonwealth of Kentucky, and
 
 
 17
 (b) He has passed an examination, either oral or written, or both, given by the examining authorities, and has received a certificate of qualification from the authorities.
 
 
 18
 The statute also provides that the period of employment for any county road supervisor shall be two (2) or four (4) years, in the discretion of the fiscal court, beginning with the second Tuesday in January of an even-numbered year.
 
 
 19
 The statute also provides that a county road supervisor "may be removed in the same manner provided for county road engineers."
 
 
 20
 K.R.S. § 179.060, entitled "Removal of engineer--Filling of Vacancy," reads in its entirety as follows:
 
 
 21
 (1) The county judge/executive may remove the county engineer, appointed under KRS 179.020, at any time for incompetency, malfeasance or misfeasance in office upon written charges after a hearing of which ten (10) days' notice shall be given by serving a copy of the charges upon the county engineer. The hearing shall be at the courthouse, in the county seat.
 
 
 22
 (2) If upon the hearing the charges are sustained, the county judge/executive shall remove the county engineer and immediately notify him by mail of his removal. The notice shall state specifically the grounds for removal. The record of the proceedings shall be filed in the office of the county clerk.
 
 
 23
 (3) Within ten (10) days after the removal, the county judge/executive, with the consent of the fiscal court, shall appoint a county engineer to fill the vacancy caused by the removal. The person so appointed shall hold office for the unexpired term or until a final order of a court of competent jurisdiction determines that the original county engineer was wrongfully and illegally removed and directs his reinstatement.
 
 
 24
 K.R.S. § 67.710 provides that the county judge/executive shall be the chief executive of the county. The statute provides that his responsibilities shall include "exercis[ing] with the approval of the fiscal court the authority to appoint, supervise, suspend, and remove county personnel (unless otherwise provided by state law)."
 
 Facts Concerning Mineer's Employment
 
 25
 Prior to the second Tuesday of January 1988, Mineer had completed successive four and two year terms. In January 1988, the county judge/executive submitted Mineer's name for another term, but the nomination was disapproved by the fiscal court. He stayed on as de facto county road supervisor until August of 1989 when County Judge/Executive Owens again submitted Mineer's name to the fiscal court.
 
 
 26
 The minutes of a regular meeting of the fiscal court held on August 14, 1989 contain the following entry:
 
 
 27
 Motion by John, seconded by Ernie, to hire Bill Mineer as Co. Rd. Supervisor for 4 years, retro-active to 2nd Tues. of 1988, whereby the Court failed to hire him in Jan. of 1988, and whereas it was reviewed and brought to the Court's attention, and pursuant to K.R.S. 179-020, hereby being resolved by the above hiring action.
 
 
 28
 Magistrate Cord testified that the county attorney was at the meeting and told the fiscal court that Mineer's term would be two years because one court could not bind the next.
 
 
 29
 Facts and Allegations Concerning Termination of Mineer's Employment
 
 
 30
 The parties and the District Court all assume that Mineer lost his employment on January 8, 1990 so we proceed on the same assumption. The record on appeal leaves something to be desired concerning Judge Call's role in the termination.
 
 
 31
 Mineer's complaint contains the general allegation that he was wrongfully discharged "by the actions of the defendants herein in their official and individual capacity [sic] on or about the 8th day of January, 1990." (emphasis added.)
 
 
 32
 The appellants' brief contains three different versions of the event. One version is that the term of Mineer's employment expired as a matter of law on the second Tuesday of January 1990 because one fiscal court could not bind the next. Under this version he was not fired. He just was not rehired. Another version is that the fiscal court voted to rescind his four year contract and thereafter Judge Call decided to nominate his own appointee. The third version espoused in the brief is that the court decided not to ratify his contract.
 
 
 33
 The January 8, 1990 minutes of the fiscal court contain the following reference to Mineer:
 
 
 34
 Motion by John Sims, second by L.C. Cord, Jr., to go into Executive Session to discuss personnel.
 
 
 35
 Vote Unam.
 
 Court came out of Exec. Session
 
 36
 Motion by Bill Thompson, seconded by Andy Cole, to nullify present Contract with Rd. Supervisor Bill Mineer, (entered into 8-14-89 for 4 years), as this Court doesn't feel bound by previous Court's motion of a Contract past their [sic] term, thereby creating a vacancy at the end of 1-8-90 workday.
 
 
 37
 Yes: Ronnie, Garey and L.C.
 
 Nay: John
 
 38
 Motion Carried.
 
 
 39
 The minutes disclose that "Bill" and "Andy" were at the meeting, but they apparently did not vote on this resolution. The motion was treated as carried although it had the affirmative vote of only three magistrates in a meeting attended by six magistrates and presided over by the county judge/executive.
 
 
 40
 The minutes show that the next item of business was Judge Call's recommendation that Bill Gulley fill the vacancy on a temporary basis. Lacking support, Call withdrew the recommendation. The fiscal court then unanimously accepted Judge Call's recommendation that James Watkins be appointed to fill the vacancy on a temporary basis.
 
 
 41
 Judge Call has testified that he did not fire Mineer; he just did not hire him.
 
 
 42
 Judge Call presided at the meeting.
 
 
 43
 There is no direct evidence that Judge Call asked the fiscal court to take any action on January 8, 1990 concerning the county road supervisor position. There is unrefuted evidence, however, that before Call took office on January 2, 1990 he intended to appoint someone other than Mineer and that between January 2, 1990 and January 8, 1990, Call informed Mineer that he intended to let Mineer go if he could do so.
 
 
 44
 From this record, it is clear that if Mineer was discharged on January 8, 1990 he was discharged by Judge Call. Whether he was lawfully discharged or not, his ability to perform his duties was taken from him on January 8, 1990 with the approval of three magistrates and with no action to prevent it by the county judge/executive and the two other magistrates.
 
 The District Court's Rationale
 
 45
 In ruling in favor of the magistrate defendants' motion for summary judgment on Mineer's First Amendment and state law claims and in denying the motions for summary judgment on the Fourth Amendment due process claims, the District Court relied on Christian v. Belcher, 888 F.2d 410 (6th Cir.1989).
 
 
 46
 The Christian court approved a ruling by the district court that under Kentucky law, the terms of all county employees expire automatically at the end of each executive administration and that it was necessary to reappoint the county flood administrator. The court further ruled that, under the circumstances of that case, the failure to do so constituted a constructive discharge. The court also ruled that the fiscal court magistrates were entitled to summary judgment on the First Amendment claims because the magistrates had no appointment authority. The court nevertheless reversed a district court grant of summary judgment on Christian's Fourteenth Amendment due process claim.
 
 
 47
 Christian is similar to this case in some respects, but is distinguishable in others. In Christian, the plaintiff was a county flood plain administrator whose appointment and removal was governed by K.R.S. § 67.710 rather than a county road supervisor whose appointment and removal was governed by K.R.S. §§ 179.020 179.060. Upon learning that he would not be reappointed by a newly elected county judge/executive, Christian sent a letter to the judge and fiscal court requesting a hearing, which request was denied. Here, Mineer never requested a hearing.
 
 
 48
 There is one other distinction between Christian and this case on appeal. Here the Court is directly concerned with qualified immunity only.
 
 
 49
 The Magistrates' Claim of Qualified Immunity
 
 
 50
 The general provisions concerning powers and responsibilities of county chief executive are set forth in K.R.S. § 67.710. They apply to the appointment and removal of county personnel except as otherwise provided by law. The law with respect to the appointment and removal of county road supervisors is "otherwise provided" in K.R.S. §§ 179.020 and 179.060
 
 
 51
 The powers and authority of county judge/executives and fiscal courts with respect to the appointment and removal of county road supervisors are spelled out in Kentucky statutes in a manner relatively free from ambiguity.
 
 
 52
 The fiscal court has a limited discretion to determine the term of employment of a county road supervisor. The term can be for two years or for four years and must always expire on the second Tuesday of an even numbered year.
 
 
 53
 The county judge/executive appoints county road supervisors. The appointment of a county road supervisor must have the consent of the fiscal court.
 
 
 54
 During a county road supervisor's terms, he can be removed for cause and only for cause. Cause for removal includes incompetency, malfeasance or misfeasance in office.
 
 
 55
 Only the county judge/executive has the authority to remove a county road supervisor. To lawfully remove a county road supervisor, the county judge/executive must follow a carefully specified procedure which includes written charges and a hearing at the courthouse after ten days' written notice. K.R.S. § 179.060(1).
 
 
 56
 If, and only if, the charges are sustained at the hearing, may a county judge/executive remove the county road supervisor.
 
 
 57
 It is a reasonable construction of the statute that the fiscal court would not be involved in the removal hearing.[3]
 
 
 58
 It is also reasonable to construe § 179.060 concerning the conditional appointment of a successor as applying to county road supervisors as well as to county engineers.
 
 
 59
 Applying the law to the undisputed facts of this case, the members of the fiscal court did not have the legal capacity to deprive Mineer of constitutional rights in connection with his termination.
 
 
 60
 The sole power of removal was vested in the county's chief executive office. As a matter of law, it is doubtful that the fiscal court would have played a role had Judge Call followed the statute in removing Mineer. Call did not initiate removal proceedings. The fiscal court had no authority to conduct a hearing.
 
 
 61
 We, therefore, conclude that the magistrates' motion for summary judgment on qualified immunity should have been granted with respect to the Fourteenth Amendment procedural due process claim as well as with respect to the First Amendment claim.
 
 
 62
 The County Judge/Executive's Claim of Qualified Immunity
 
 
 63
 As a matter of law, it was County Judge/Executive Call who had the authority to initiate proceedings to remove Mineer from his employment. As a matter of law, the fact that Mineer was effectively fired was Call's responsibility.
 
 
 64
 On the record before the Court there are fact questions concerning Call's motives for terminating Mineer's employment. Call may have terminated Mineer in retaliation for political activity. He may have terminated him for incompetence. These fact questions, however, are irrelevant if Call had qualified immunity for his conduct, and they are likewise irrelevant in resolving the issue of qualified immunity.
 
 
 65
 The relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct did not violate clearly established statutory or constitutional rights. In determining whether qualified immunity attaches, the focus is on the state of the law as it existed when the defendant took his challenged action. See, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Anderson v. Creighton, 483 U.S. 635 (1987).
 
 
 66
 I. Fourteenth Amendment Procedural Due Process Claim
 
 
 67
 Mineer's claim under 42 U.S.C. § 1983 that Judge Call's conduct was violative of the Due Process Clause of the Fourteenth Amendment is dependent upon two conditions: 1) that he had a property right to continued employment and 2) that its deprivation was without due process of law.
 
 A. Property Right
 
 68
 For reasons set forth above we conclude that on January 8, 1990, Mineer had two more years to serve on a four year term of employment and that his expectation of continued employment was a property right within the meaning of the Fourteenth Amendment.
 
 
 69
 Call raises several arguments to support the proposition that on January 8, 1990, it was not clearly established that Mineer's term did not terminate as a matter of law on that date.
 
 
 70
 One argument is based upon an opinion by the state attorney general. OAG 78-432 supports the general proposition that a fiscal court may not enter into contracts which extend beyond its own term. The opinion clearly states, however, that this is not an absolute principle: "there is one basic exception to this general principle.... It is that if a particular statute conferring the power to contract clearly authorizes the fiscal court to make a contract extending beyond its own term, the statute would govern...." OAG 78-432. We find that § 179.020 clearly allows the fiscal court to authorize four year terms of employment for county road supervisors.
 
 
 71
 The county attorney's stated opinion at the August 14, 1989 meeting of the Fiscal Court was based upon OAG 78-432. There are circumstances in which reliance on the advice of counsel may support a claim of qualified immunity. See, e.g., V-1 Oil Co. v. Wyoming, 902 F.2d 1482 (10th Cir.1990) ("reliance on advice of counsel in certain circumstances rises to the level of extraordinary circumstances"). In this case, Judge Call cannot reasonably claim that he relied on the county attorney's opinion because he was not in office when the county attorney expressed his opinion nor is there anything in the record to suggest reliance.
 
 
 72
 Call's primary argument is based upon Christian v. Belcher, wherein another panel of this court, while affirming the district court's grant of summary judgment, stated:
 
 
 73
 Moreover, as noted earlier, the district court expressly held that under Kentucky law, the terms of all county employees expire automatically at the end of each executive administration, and that '[a]fter Belcher was elected, [Christian] had to be reappointed to the job of [FPA].' Since we have found no Kentucky authority to the contrary, we defer to the experienced district judge's interpretation of the law of the state in which he sits.
 
 
 74
 Christian, 888 F.2d at 414-15.
 
 
 75
 This language however, has no application to a county road supervisor because § 179.020(7) provides an exception to the general principle that all terms expire automatically at the end of each executive administration. An appointment to a four year term necessarily extends beyond the executive administration in existence at the time of the appointment.
 
 
 76
 We, therefore, conclude that Mineer's property right in his four year term of employment was clearly established. All one had to do to reach this conclusion was to read the applicable statutes.
 
 B. The Process Due
 
 77
 Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), and its progeny define the pretermination process which is due. The Kentucky statute provides adequate process to satisfy the Fourteenth Amendment if followed. Here there was no pretense to follow the statutory procedures for terminating Mineer. Judge Call cannot claim qualified immunity because he totally disregarded clearly established procedures set forth by statute.
 
 II. First Amendment Claim
 
 78
 Whatever the law may have been with respect to patronage hiring at the time Judge Call took the challenged action, there is no authority for the proposition that political factors justify a decision to terminate an employee during the course of that employee's statutorily defined term of employment.
 
 CONCLUSION
 
 79
 The District court's denial of the magistrates' motion for summary judgment on the Fourteenth Amendment due process issue is REVERSED.
 
 
 80
 The district court's denial of the county judge/executive's motion for summary judgment on the qualified immunity issue should be AFFIRMED.
 
 
 81
 RALPH B. GUY, JR., concurring in part and dissenting in part.
 
 
 82
 I concur in that portion of the court's opinion which grants qualified immunity to the magistrates with respect to the Fourteenth Amendment procedural due process claim and affirms the trial court's grant of qualified immunity to the magistrates with respect to the First Amendment claim. I dissent on the qualified immunity issue as it relates to the county executive. I would grant qualified immunity to him on both the Fourteenth and First Amendment claims.
 
 I.
 
 83
 To prove a violation of procedural due process, a plaintiff must demonstrate that he was deprived of a constitutionally protected liberty or property interest and that federal due process requirements were disregarded. Lee v. Western Reserve Psychiatric Habilitation Center, 747 F.2d 1062, 1067 (6th Cir.1984). An employee may demonstrate a protected property interest in continued employment by showing an express or implied state law basis for that interest. Bishop v. Wood, 426 U.S. 341, 344-45 (1976). In at least one instance, the Supreme Court has held that a non-tenured state employee may prove such an interest by showing that the policies and practices of the employer justified his legitimate claim of entitlement to continued employment. Perry v. Sinderman, 408 U.S. 593, 602-03 (1972). Thus, the first question in this case is whether a reasonable official in Call's position could have believed that Mineer did not have a protectible property interest in his employment.
 
 
 84
 In order to resolve this issue, it is important to determine whether Mineer actually had an ongoing employment contract or whether his term of office expired with that of the outgoing fiscal court and county executive. If Mineer had a clear right to his position as road supervisor for four years beginning on January 8, 1988, then Call's treatment of Mineer could be actionable. If, as Call alleges, Mineer's term of office expired contemporaneously with that of the administration that hired him, Mineer had no clearly established property interest in his further employment,[1] and qualified immunity would shield Call from Mineer's procedural due process claim.
 
 
 85
 The resolution of this issue turns on the proper construction of Kentucky law. In Christian v. Belcher, 888 F.2d 410 (6th Cir.1988), this court concluded that under Kentucky law the terms of all county employees expire automatically at the end of each executive administration. Id. at 414. Mineer does not respond directly to Christian 's conclusion in his brief; rather, he contends that the fiscal court which appointed him to a four-year term did so in furtherance of the plain meaning of Kentucky law. Citing Kentucky Revised Statutes Annotated § 179.020(7), which provides that the term of office of a county road supervisor will be either two or four years at the discretion of the fiscal court, Mineer argues that the fiscal court simply followed its statutory mandate when it appointed him to a four-year term retroactive to January 8, 1988. Thus, Mineer's contention by implication is that the Christian conclusion applies only where no specific term of office exists. Under Mineer's construction of Kentucky law, then, only non-civil service employees appointed without a specific term of office are subject to the Christian rule that employees' terms expire at the conclusion of an administration's term in office.
 
 
 86
 I find Mineer's reading of the statute unpersuasive. The conclusion of this court in Christian that the terms of non-civil service employees expire contemporaneously with that of the outgoing administration remains the most commonsensical reading of the applicable Kentucky law. See OAG 82-63 (absent a merit system, county employees--including the county road supervisor--under a previous administration automatically lose their jobs at the beginning of the new administration); OAG 82-22 (present fiscal court may not bind fiscal court coming into office in January 1982, with a contract for a county road supervisor; appointee could only fill out the remainder of the term ending on the second Tuesday of January 1982). Kentucky Revised Statutes Annotated § 179.020(7) has much less relevance than Mineer attempts to give it. The statute gives the county executive the power to employ a county road engineer or supervisor with the consent of the fiscal court. See OAG 82-142. Both the county executive and the fiscal court magistrates serve four-year terms. Ky.Rev.Stat.Ann. § 67.050 (magistrates); Ky.Rev.Stat.Ann. § 67.700 (county executive). Thus, the statute serves only to give the county executive and the magistrates the flexibility to make either one or two supervisor appointments during their terms. The fiscal court can consent to the county executive's selection of a road supervisor for a two-year appointment, allowing the fiscal court and the county executive the opportunity to re-think their decision in the middle of their four-year terms, or they can select a road supervisor for their entire terms.
 
 
 87
 A coherent reading of the entire statute compels the conclusion that a road supervisor cannot serve a two-year term and then receive a four-year appointment, as was attempted by the incumbents in this case. Under section 179.020(7), a county road supervisor's period of employment begins with the second Tuesday in January of an even-numbered year. Importantly, beginning with the November 1977 election, county executives' terms of office began on the first Monday in January of the following year. See Ky.Rev.Stat.Ann. § 67.700. Thus, as four-year officeholders, county executives like Call would necessarily begin their terms on even-numbered years. The fact that the terms of county executives and road supervisors parallel each other is significant, for it suggests that section 179.020(7) allows a road supervisor to serve consecutive two-year terms or one four-year term. See OAG 82-22 (incoming county executive, with consent of fiscal court, must appoint a county road supervisor whose term will begin the second Tuesday of January 1982, and will end as of the second Tuesday of 1984, unless another two-year term is desired; otherwise, the road supervisor's term would end on the second Tuesday in January of 1986).
 
 
 88
 To read the statute otherwise would allow the absurdity that has developed in this case--lame duck magistrates and county executives could appoint officers to terms of office which would bind succeeding popularly-elected administrations. Such a thwarting of the majority will is not commanded by Kentucky law. Mineer did not have a valid contract which extended his term in office beyond January 1990. Thus, Call acted reasonably in determining that it was lawful to conclude that Mineer did not have a cognizable property interest, and he is therefore entitled to qualified immunity.
 
 
 89
 The district court, relying on Christian, found a material issue of fact remained as to whether Mineer had an expectation of continued employment based upon the fact that all other county employees were allowed to maintain their jobs despite the change in administration. See Christian, 888 F.2d at 417 (finding a genuine issue as to whether plaintiff had a legitimate claim of entitlement to continued employment when "during [the applicable] time period [plaintiff] was the only county employee not to be reappointed to his job upon a change in administration"). This conclusion is relevant to the merits of Mineer's underlying procedural due process claim. But whether Mineer ultimately had a protectible property interest matters not to the question of whether Call acted reasonably in concluding that Mineer did not have a protectible property interest.
 
 
 90
 I do not focus, as did the district court, on whether Call reasonably should have known of Mineer's right to notice and a hearing. Framing the issue in that way implicitly decides that Mineer did in fact have a protectible property interest in his employment which required notice and a hearing. Having found that Call reasonably concluded that Mineer did not have a protectible property interest, I would not reach the question of notice and hearing.
 
 II.
 
 91
 Having concluded that Mineer did not have a valid contract which extended beyond January 1990, I next consider whether Call's politically motivated decision not to rehire Mineer violated clearly established First Amendment rights of Mineer. When considering politically motivated employment decisions, we normally do not distinguish between dismissals and decisions not to rehire. See id. at 416 (treating termination and failure to rehire as indistinguishable for First Amendment purposes). Thus, Call correctly characterizes this as a "failure to rehire"/constructive discharge case.
 
 
 92
 Call asserts that at the time of Mineer's dismissal in early 1990 the law was insufficiently developed, thereby entitling Call to qualified immunity because he acted in an objectively reasonable manner. See Malley v. Briggs, 475 U.S. 335, 341 (1986). I agree. In January 1990, First Amendment law did not clearly establish that a county executive could not refuse to rehire county road supervisors for politically motivated reasons.
 
 
 93
 In early 1990, the relevant case law on politically motivated personnel decisions included Branti v. Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976); Christian v. Belcher, 888 F.2d 410 (6th Cir.1989); and Balogh v. Charron, 855 F.2d 356 (6th Cir.1988). Plaintiff relies particularly on Elrod, Branti, and Christian to support his contention that the law clearly establishes that county road supervisors may not be dismissed from office for political reasons.
 
 
 94
 The Supreme Court first considered politically motivated personnel decisions in Elrod. A plurality of the Court concluded that a governmental unit violated the First Amendment when it installed a traditional patronage system of government employment. The plurality noted, however, that government has a vital interest in ensuring that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration." Elrod, 427 U.S. at 367. Thus, confidential employees in policymaking positions could be dismissed for political reasons. Id. at 372. Justice Stewart's limiting concurrence, which provided the critical fifth vote in Elrod, held that a "nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." Id. at 375 (Stewart, J., concurring).
 
 
 95
 In an affirmation of Elrod, the Court in Branti clarified the latitude government officials enjoy in making personnel decisions. Importantly for our purposes, the Court noted that "it is not always easy to determine whether a position is one in which political affiliation is a legitimate factor to be considered." Branti, 445 U.S. at 518 (quoting Elrod, 427 U.S. at 367). It then reformulated the inquiry by abandoning the labels "policymaker" of "confidential employee" in favor of asking "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518. Then, the Court held that the continued employment of an assistant public defender could not be conditioned on political affiliation. Id. at 519.
 
 
 96
 At the time of Mineer's dismissal, the Sixth Circuit's contribution to this area of the law included three cases which discussed the propriety of political firings and hirings. In Balogh, this court held that a trial judge bailiff was a "confidential employee" whose discharge, allegedly because he supported the judge's opponent in an earlier judicial election, did not violate the First Amendment. The court emphasized that as a judicial aide the bailiff handled sensitive communications, acted as the judge's bodyguard, and learned the outcome of cases prior to the publication of those decisions. The function of the job, then, subjected the bailiff to politically-motivated discharge.
 
 
 97
 In Christian v. Belcher, a former county flood plain administrator and building inspector brought an action against the county executive and fiscal court magistrates arising out of their failure to rehire him after the election of a new county executive. The district court granted summary judgment to all defendants, and this court remanded the case for further proceedings based on our conclusion that genuine issues of material fact existed as to whether the former administrator was dismissed for political reasons and whether party affiliation was an appropriate requirement for his position. 888 F.2d at 415-16. In Belcher, the court addressed the merits of whether the former administrator's dismissal had been proper. The issue of qualified immunity was never considered.
 
 
 98
 In summarizing the state of the law on the issue of politically motivated personnel decisions, this court in a later case characterized the law as "unsettled." Cagle v. Gilley, 957 F.2d 1347, 1349 (6th Cir.1992). Cagle is directly relevant to the resolution of Call's qualified immunity issue. In Cagle, we reversed a district court's denial of summary judgment to a sheriff who had failed to rehire former deputies allegedly due to their election support of an opponent. Concluding that "any sheriff of reasonable competence in [defendant]'s position, measured objectively, would [not] have clearly understood that he was under an affirmative duty to have refrained from refusing to reappoint the deputies in August and September, 1988[,]" id., at 1349, this court found that the sheriff was entitled to qualified immunity.
 
 
 99
 These cases support Call's contention that he is entitled to qualified immunity on Mineer's First Amendment claim. In addition to the cases already cited, which constituted the law at the time of Mineer's dismissal, this court in recent years has held that a wide variety of public officials do not enjoy the right to be free from patronage dismissal. See, e.g., Monks v. Marlinga, 923 F.2d 423 (6th Cir.1990) (city prosecutor); and Williams v. City of River Rouge, 909 F.2d 151 (6th Cir.1990) (city attorney). Whatever the ultimate merits of Mineer's claim, it cannot be said that he had a clearly established right as a county road supervisor to be free from a politically motivated dismissal.[2]
 
 
 
 *
 Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The plaintiff also claims that his termination violated the Fifth Amendment, but he does not explain how the Fifth Amendment was implicated
 
 
 [2]
 It is not clear why magistrate John Sims filed a notice of appeal from the order denying qualified immunity. Because he was not sued in his individual capacity, the defense of qualified immunity was not available to him
 
 
 [3]
 An annotation to K.R.S. § 179.060 contains the following entry:
 KRS 179.060 provides, in effect, pursuant to subsection (2) of this section, that the county judge/executive can remove a county road supervisor, without the consent of the fiscal court. However, it can be said that KRS 67.710(7) amended KRS 179.060 by implication, and KRS 67.710(7) requires the county judge/executive to exercise his authority to remove county personnel with the approval of the fiscal court. OAG 84-205.
 Since the county judge/executive did not initiate the removal procedures spelled out by K.R.S. § 179.060 we need not determine whether the statutory hearing would be conducted by the fiscal court or by the county judge/executive.
 
 
 [1]
 For qualified immunity purposes, Call need only demonstrate that Kentucky law remained unclear regarding the terms of county road supervisors at the time of Mineer's dismissal. If reasonable county officials could disagree on this issue, immunity should attach. Guercio v. Brody, 911 F.2d 1179, 1185 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1681 (1991)
 
 
 [2]
 If it were clearly established that political considerations were not an appropriate job requirement for the position of county road supervisor, then the only jury question, in this case, would be whether the defendant's dismissal of plaintiff was motivated solely by politics. Qualified immunity is not a jury issue