Wanda HAUGHT, Plaintiff–Appellant,

v.

Betty MITCHELL, individually; Karen Jackson, individually; and Joseph Massie, individually, Defendants–Appellees.

No. 01–3433.

United States Court of Appeals, Sixth Circuit.

Nov. 21, 2002.

Before NELSON, BOGGS, and NORRIS, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Plaintiff Wanda Haught is a licensed practical nurse who. while working for the Ohio Department of Corrections at the Mansfield Correctional Institution ("MCI"). encountered practices by certain

staff members that concerned her. She filed suit against defendants—Betty Mitchell, the warden of MCI;[1] Karen McCluney–Jackson, the Health Care Administrator for MCI; and Joseph Masi, an investigator for the institution—alleging that they abridged her First Amendment rights by retaliating against her for speaking out about matters of public concern.

The district court granted summary judgment to defendants. For the reasons outlined in this opinion, we affirm that judgment.

### I.

Plaintiff began working at MCI in 1994. The events leading to this suit began two years later when Warden Ralph Coyle, the predecessor to defendant Mitchell, placed plaintiff on leave without pay pending an investigation into alleged sexual contact between her and an inmate. In fact, plaintiff had only accepted the telephone number of the inmate's sister and had then gone out to dinner with her. Nonetheless, a written reprimand was placed in her file on January 14, 1997.

On May 3 of that year, plaintiff received permission to move from the second to the third shift in part due to friction between her and McCluney–Jackson, who supervised her. Plaintiff suspected that McCluney–Jackson played a part in the investigation into her alleged sexual misconduct. Plaintiff also believed that McCluney–Jackson took a dim view of practical nurses and was attempting to have them eased out of use at MCI.

On October 21 plaintiff wrote a statement in the wake of an inmate's murder. The statement, which was written before Mitchell became warden, was provided to the prosecutor investigating the death.

In March 1998 plaintiff supplied another statement at the request of her union. This time her observations related to an inmate's suicide. Essentially, the statement supported the actions of the two corrections officers who had been responsible for monitoring the inmate. According to plaintiff, she was told by McCluney–Jackson's predecessor that Mitchell was miffed about the statement.

The following May plaintiff was in an automobile accident and suffered a herniated disc. As a result, she took disability leave on June 19. While she was on leave, McCluney–Jackson became acting health care administrator at MCI. By her own admission, plaintiff was unhappy with this turn of events and sought to prevent McCluney–Jackson from being permanently promoted to this position. Plaintiff therefore began a letter writing campaign cataloging McCluney–Jackson's alleged deficiencies, which included permitting corrections officers to dispense medications. These letters, some of which were sent anonymously, were addressed to various governmental agencies, among them the Ohio Attorney General's office, the Ohio Board of Nursing, and the Ohio Department of Rehabilitation and Correction.

On September 16, 1998, McCluney–Jackson informed plaintiff that she had been reassigned to second shift because given "the critical staffing levels at the infirmary at this time this is the only viable option." Plaintiff contends that this reassignment occurred in retaliation for her letter writing campaign. She also complains that at approximately the same time she began to receive her disability checks a month late. She attributes this dilatory processing to the fact that defendants wished to make her life difficult in response to her criticisms.

As the result of plaintiff's letter writing, the Ohio Department of Rehabilitation and

---

1. Mitchell has since moved on and is now a member of the Ohio Parole Board.

Correction undertook an investigation of McCluney–Jackson that was completed in January 1999. Among other things, the report concluded, "[W]e find that there is sufficient evidence to show that Nurse McCluney–Jackson did permit officers to pass controlled and self carry medications to inmates outside her presence and/or supervision, after being advised not to by Mr. Cain,[2] Health Care Administrator." It also corroborated two additional charges leveled at McCluney–Jackson. As a result, she received "corrective" counseling.

Defendant Joseph Masi took part in the investigation. At one point, Masi contacted Martin Yant, an investigative reporter. He told Yant about the accusations against McCluney–Jackson, as well as the allegations that plaintiff had engaged in improper conduct with an inmate. He then asked Yant to find out what he could about plaintiff. Although Masi asked Yant to disregard his request shortly thereafter, Yant had already contacted plaintiff to warn her.

On September 17, 1999 plaintiff filed this suit. Specifically, plaintiff alleged that defendants retaliated against her for exercising her First Amendment rights by changing her shift assignment, slowing down her receipt of disability checks, asking Yant to harass her, and circulating rumors of her marital infidelity. She formally resigned her position on November 4 without returning from her disability leave.

## II.

■ The district court granted summary judgment to defendants. Although it concluded that statements made by plaintiff about "the death of one inmate, and the suicide of another, both addressed matters of public concern," it went on to find that any adverse actions suffered by plaintiff were minimal and insufficiently linked to her protected speech. Specifically, the court cited the following weaknesses in plaintiff's case: 1) her shift reassignment was neither "actionably adverse" nor the result of the statements about the two inmates; 2) she had failed to show any of the named defendants "had any responsibility for the processing of Plaintiff's disability check"; 3) neither defendant Mitchell nor McCluney–Jackson knew of the contact between Masi and Yant; 4) "Plaintiff has not shown how Investigator Masi enlisting the services of an investigative reporter even constituted an adverse action, especially in light of the fact that he withdrew the request just days afterward"; and 5) "[t]he court fails to see how such rumors [of infidelity] could be actionable adverse actions" and, in any event, "Plaintiff has not pointed to any evidence showing which Defendant, if any, engaged in such conduct, or how such conduct was the result of her statements concerning the two inmates." Order, March 28, 2001 at 10, 13–15. The court summarized its decision in this fashion:

> ... Plaintiff has not demonstrated to the court how any of the retaliatory actions alleged in the Complaint occurred as a result of the only speech that was protected—her statements regarding the two inmates. Moreover, Plaintiff has not demonstrated how any of the acts as alleged are sufficiently "adverse," such as would deter a person of "ordinary firmness" from engaging in the protected speech. As a result, Plaintiff has not shown that any of the alleged retaliatory actions support her First Amendment claim.

Order. March 28, 2001 at 15.

## III.

Summary judgment is proper "if the pleadings, depositions, answers to inter-

---

**2.** Cain was McCluney–Jackson's predecessor.

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This court reviews *de novo* a grant of summary judgment. *Brooks v. American Broad. Cos.,* 999 F.2d 167, 174 (6th Cir.1993). When reviewing a motion for summary judgment, we must draw all justifiable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Christian v. Belcher,* 888 F.2d 410, 413 (6th Cir.1989). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the plaintiff. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, this court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County,* 203 F.3d 426, 431 (6th Cir.2000).

This court has outlined the proof necessary to make out a claim for retaliation in these terms:

> In order to prove a claim for retaliation, a plaintiff must establish the following elements: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998) (citing cases). We express no view as to whether plaintiff's statements about the deaths of the two inmates constituted matters of public concern. Assuming *arguendo* that they did, however, we hold that the judgment for defendants would nevertheless be proper because plaintiff did not satisfy either the second or third elements of a retaliation claim as explained by the district court in its order granting summary judgment. Accordingly, we affirm the judgment for the reasons set forth on pages 12 to 15 of the district court's Order dated March 28, 2001.

## IV.

The judgment is **affirmed**.