*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0202P (6th Cir.)
File Name: 02a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THOMAS J. QUINN,
   *Plaintiff-Appellant,*

   *v.*

JOHN F. SHIREY, City
Manager; CITY OF
CINCINNATI; ROBERT
BEDINGHAUS; JOHN DOWLIN;
THOMAS NEYER; DAVID
KRINGS; HAMILTON COUNTY,
   *Defendants-Appellees.*

No. 00-4250

> Appeal from the United States District Court
> for the Southern District of Ohio at Cincinnati.
> No. 99-00555—Herman J. Weber, District Judge.
>
> Argued: March 19, 2002
>
> Decided and Filed: June 10, 2002
>
> Before: BATCHELDER and CLAY, Circuit Judges;
> CARR, District Judge.[*]

_____

[*]The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Marc D. Mezibov, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for Appellant. Kerry P. Hastings, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, Roger E. Friedmann, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Marc D. Mezibov, Christian A. Jenkins, SIRKIN, PINALES, MEZIBOV & SCHWARTZ, Cincinnati, Ohio, for Appellant. Kerry P. Hastings, Rosemary Doreen Canton, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, Carl J. Stich, Jr., HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellees.

———————————

**OPINION**

———————————

CLAY, Circuit Judge. Plaintiff, Thomas J. Quinn, appeals the district court's September 12, 2000 order dismissing his complaint pursuant to Fed. R. Civ. P. 12(b)(6) against the following Defendants: the City of Cincinnati and City Manager John F. Shirey; Hamilton County and the following county board members: Robert Bedinghaus, John Dowlin, and Thomas Neyer (collectively referred to as "Board" or "Board of Commissioners"); and Hamilton County Administrator David Krings. Plaintiff alleges that Defendants violated his constitutional due process rights by publicly making stigmatizing comments about him and then forcing him to resign without affording him due process in the form of a name-clearing hearing. The district court dismissed Plaintiff's complaint because of his failure to allege that he had requested a name-clearing hearing. For the reasons set out below, we **AFFIRM**.

## BACKGROUND

### Procedural History

On July 20, 1999, Plaintiff filed a complaint against Defendants alleging that Plaintiff's constitutionally protected liberty interest in his reputation was infringed when he was forced to resign from his position as director of the Metropolitan Sewer District ("MSD") amid publicized comments made by Defendants who charged that Plaintiff had engaged in questionable or possibly illegal activities.[1] Plaintiff sought, *inter alia*, compensatory and punitive damages and a name-clearing hearing. On September 17, 1999, the County Defendants filed an answer. On December 10, 1999, the City Defendants filed a motion to dismiss Plaintiff's complaint. The County Defendants did not join the City Defendants' motion to dismiss or file a motion to dismiss of their own. Plaintiff filed a memorandum in opposition to the City Defendants' motion to dismiss on February 28, 2000. On September 12, 2000, the district court granted the City Defendants' motion and dismissed Plaintiff's complaint in its entirety as to all Defendants. Plaintiff filed a timely notice of appeal on October 6, 2000.

### Facts

Since1968, Hamilton County and the City of Cincinnati have jointly operated the MSD. Under an agreement entered into by those two entities, Cincinnati performs the day-to-day management of the MSD. However, the Board retains ultimate authority and control over the MSD, including managerial responsibility for adopting rules and regulations and legislation for the MSD. Although Plaintiff was "designated" a city employee, he alleges that he also had "reporting responsibilities" to the Board.

---

[1] Throughout the opinion, the City of Cincinnati and Shirey, when referred to collectively, will hereinafter be referred to as the "City Defendants." When referred to collectively, the remaining Defendants will be referred to as the "County Defendants."

Plaintiff alleges that beginning in the spring of 1997 and continuing through April 1998, city and county officials publicly issued disparaging statements regarding Plaintiff and his mismanagement of the MSD. He contends that the comments "implied, suggested or conveyed the impression that [he] was an unprincipled, unscrupulous, self-serving and hence a corrupt public administrator who had bent or ignored rules and misused his public office to the professional, political and financial advantage of himself and his friends." (J.A. at 5, ¶ 11.) The alleged comments include: (1) a Cincinnati internal auditor stating that an agreement negotiated by Plaintiff between the MSD and an independent contractor, while not illegal, served no valid purpose and should be discontinued; (2) a city council person questioning the propriety of Plaintiff serving on a board which supervised work Plaintiff's wife performed for the city; (3) the same council person calling for "the appointment of a special prosecutor to investigate what media reports characterized as 'allegations of wrongdoing' and 'alleged improprieties;'" (4) Defendant Bedinghaus commenting that he was not confident the Board had received the "complete story" regarding the issue of whether the waiver of sewer tap-in fees had been proper and calling Plaintiff's response to inquiries "troublesome;" (5) statements by the Board and city officials that they were going to order an audit of the MSD or that such an audit was appropriate for the period of Plaintiff's tenure; (6) the Board's announcement that it had hired a former FBI agent and white collar crime specialist to investigate allegations of illegal conduct by Plaintiff and the MSD; (7) Defendant Bedinghaus commenting that Plaintiff "had trampled over the intentions of the Board," and that "the embarrassments" created by Plaintiff were of a "career ending" nature; (8) statements by the media that a grand jury had been investigating "charges of wrongdoing" by the MSD and Plaintiff and that the "probe" had "deepened from charges of bad management to potential criminality;" and (9) other statements by city officials calling for Plaintiff's termination and/or suggesting that he should be terminated. (J.A. at 9-11, ¶ 12.)

arguments inasmuch as the district court did not rely upon them in disposing of this case. This Court "typically refrain[s] from considering issues not passed upon by the lower courts," especially where the issues involve unresolved factual disputes and where our refusal to reach these issues would not result in injustice to the parties. *Pfennig v. Household Credit Services, Inc.*, 286 F.3d 340, 349-50 (6th Cir. 2002) (citing *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 335 (6th Cir. 1997)). In light of our holding that the district court properly dismissed Plaintiff's complaint in its entirety because he failed to request a name-clearing hearing, we need not reach the other issues raised by Defendants.

## CONCLUSION

In order for a plaintiff to show that he has been deprived of a liberty interest in his reputation without due process, the plaintiff first must request a name-clearing hearing. It is undisputed that Plaintiff failed to request a name-clearing hearing before filing the instant action, and the district court properly dismissed his complaint. We therefore **AFFIRM**.

Even were we to agree with Plaintiff that because he only attempts to bring a liberty interest claim, he did not have to use the exact words "name-clearing hearing," in order for his claim to survive, his request still would have had to "sufficiently apprise" Defendants of his desire for a hearing to clear his name "following the dissemination of the statements." *Ludwig*, 123 F.3d at 411. Plaintiff fails to allege that he informed Shirey that he requested not to be fired so that he could clear his name. Even accepting the allegations in Plaintiff's complaint as true and construing them in his favor, we do not see how Defendants could be required to interpret Plaintiff's request to keep his job until pending investigations concluded as being tantamount to a request for a name-clearing hearing. Thus, the district court properly dismissed Plaintiff's complaint.[4]

### C. Alternative arguments

Finally, in support of their motion to dismiss, the City Defendants raise numerous alternative arguments which were asserted below but not reached by the district court. The County Defendants also raise numerous arguments on appeal to support dismissal of Plaintiff's complaint. However, the County Defendants asserted none of these arguments below, and as stated earlier, failed to join the City Defendants' motion to dismiss. Plaintiff urges the Court not to reach these

---

[4] As stated, the City Defendants filed a motion to dismiss in this case, which the County failed to join. However, under the facts of this case, Plaintiff's complaint was properly dismissed as to all Defendants. *See I-Star Communications Corp. v. City of East Cleveland*, 885 F.Supp. 1035, 1042-43 (N.D. Ohio 1995) (holding that although city defendants failed to move to dismiss plaintiff's complaint, because the individual council member defendants had so moved, court would grant dismissal as to all defendants inasmuch as complaint failed to state a claim for relief and plaintiff had opportunity to fully address arguments that applied equally to both defendants)*; Washington Petroleum & Supply Co. v. Girard Bank*, 629 F.Supp. 1224, (M.D. Pa. 1983) (holding that dismissal was proper as to two different defendant banks, although only one of them filed motion to dismiss, where both defendants were similarly situated and plaintiff was afforded full and fair opportunity to respond to arguments concerning a basis for the dismissal that applied to both defendants).

---

Plaintiff alleges that on April 28, 1998, he communicated with Defendant Shirey that he was innocent of all allegations and "requested that the City defer any action on the resolution to fire [him] pending conclusion of these audit and grand jury investigations." Despite his request, Shirey allegedly told Plaintiff that he would fire him unless Plaintiff submitted his resignation the following morning. Plaintiff alleges that he submitted his resignation because of Shirey's ultimatum and the criminal and civil investigations launched by Defendants. Plaintiff alleges that for the good of the city and the county, he felt constrained to tender his resignation, which he did on April 29, 1998.

### DISCUSSION

### I.

This Court reviews *de novo* a district court's dismissal of a complaint under Rule 12(b)(6). *Hammonds v. Norfolk S. Corp.*, 156 F.3d 701, 704 (6th Cir. 1998) (citing *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997)). The Court must "construe the complaint in the light most favorable to the plaintiff and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him to relief." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002) (quoting *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000)). Further, the allegations must be construed in the light most favorable to the plaintiff. *Mertik v. Blalock*, 983 F.2d 1353, 1355 (6th Cir. 1993).

### II.

Plaintiff contends that the district court erred in dismissing his complaint for several reasons. He argues that neither the Supreme Court nor other circuits follow this circuit's rule of requiring a plaintiff to request a name-clearing hearing as a prerequisite to bringing a suit alleging deprivation of a liberty interest under the due process clause. He argues that such a rule shifts the burden of implementing constitutional safeguards from the public employer to the employee. He

contends that it is unfair to force a plaintiff to request a name-clearing hearing as a prerequisite to bringing a due process liberty interest suit, when the plaintiff may not have known he had a right to request such a hearing in the first place and the employer did not perform its "affirmative duty" of apprizing the plaintiff of the right to a hearing.

The City Defendants counter that this circuit's precedent is clear in that a plaintiff must request a name-clearing hearing in order to bring the type of constitutional challenge Plaintiff alleges. The City Defendants also argue that Plaintiff's contention that Defendants had an "affirmative duty" to apprize him of his constitutional right to a name-clearing hearing is raised for the first time on appeal, conflicts with this circuit's precedent, and is irrelevant as Plaintiff does not claim that he did not know he had such a right because Defendants failed to tell him.

Both the City and County Defendants raise other arguments to support dismissal of Plaintiff's complaint. For instance, Defendants contend that the statements alleged in Plaintiff's complaint are insufficient as a matter of law to support a deprivation of liberty interest claim, and the County Defendants, specifically, assert that because Plaintiff was not a County employee, the county owed him no right to a name-clearing hearing.

As we explain below, Plaintiff failed to request a name-clearing hearing, which was fatal to his claim, and therefore the district court properly dismissed his complaint.

### III.

The Fourteenth Amendment forbids state actors from depriving individuals of life, liberty or property without due process of law. *See Mertik,* 983 F.2d at 1359; *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972); *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996) ("To sustain a procedural due process claim, a plaintiff must first demonstrate the existence of a protected liberty or property interest."). Except in exceptional circumstances, not

had informed the defendants that the investigation into the charges levied against him had deprived him of due process. *Id*. at 411. Further, his complaint contained similar allegations regarding defendant's actions and the investigation and a lack of due process. *Id*. The Court held that these references to lack of due process were insufficient to show the plaintiff had requested a name-clearing hearing. *Id.* The Court noted that it would have been impossible for the defendants to tell whether the plaintiff was complaining about a lack of due process with regard to his property interest claim or his liberty interest rights. *Id.* In so noting, the Court pointed out that in the Fifth Circuit's *Rosenstein* case, the plaintiff's request to "appeal" the decision to terminate him through his employer's established procedures for something he "did not do" sufficed as a request for a name-clearing hearing, where the only issue was the truth or falsity of the charge that stigmatized him. *Id.* Because the plaintiff in *Rosenstein* only asserted a liberty interest claim, his request for an appeal and denial of the charges against him sufficed as a request for a name-clearing hearing. *See McManamon*, 2000 WL 1888616, at *6 n.9 ("The court distinguished *Rosenstein* in *Ludwig* when it required plaintiff to ask specifically for a name-clearing hearing where the plaintiff raised both liberty and property deprivation claims.").

In the instant case, Plaintiff only asserts a liberty interest claim. Thus, he contends that unlike the plaintiff in *Ludwig*, he was not required to utter the specific words "name-clearing hearing." Just as the plaintiff in *Rosenstein* did, Plaintiff in the instant case claimed that he was innocent of the charges against him. However, unlike the plaintiff in *Rosenstein*, Plaintiff did not ask for a review through an established appeals process of the decision to terminate him. Indeed, the Fifth Circuit has noted that by requesting an appeal through such an established procedure, the plaintiff in *Rosenstein* "asked for a public review of the decision to fire him." *Howze v. City of Austin*, 917 F.2d 208, 208-09 (5th Cir. 1990).

Plaintiff so alleged, it is doubtful that Plaintiff's claim would have survived the City Defendants' motion to dismiss. As stated above, a plaintiff must request and be denied a name-clearing hearing in order to have been deprived of a liberty interest without due process. *Brown*, 214 F.3d at 723. Therefore, a plaintiff who fails to allege that he has requested a hearing and was denied the same has no cause of action, whether or not he had been informed of a right to a hearing before filing suit. *Id*.

## B. Plaintiff's alleged request for a name-clearing hearing was inadequate

Plaintiff alleges in his complaint that he informed Defendant Shirey that he was innocent of all the charges against him and requested that any resolution to fire him wait until the audits and grand jury investigations concluded. He further alleges that his "request was based on the fact that pending the outcome of these public inquiries and hearings, it would be impossible for [him] to meaningfully clear his name of the stigma that had been imposed on him by reason of Defendants' statements and reports."[3]    (J.A. at 12.) Plaintiff argues that his statements to Shirey should suffice as a request for a name-clearing hearing. We disagree.

To support his argument, Plaintiff essentially relies on *Ludwig*, 123 F.3d 404. In that case, this Court noted that a letter attached to the plaintiff's complaint indicated that he

---

[3]Defendants point out that this allegation defeats any claim that Plaintiff did not know he had a right to a name-clearing hearing inasmuch as he claims his request not to be fired until after the investigations were concluded was based on his belief that he could not clear his name otherwise. Plaintiff counters that to adopt such an interpretation would in effect construe the allegations in his complaint against him, which this Court cannot do on a 12(b)(6) motion. *See Mertik*, 983 F.2d at 1355. We agree with Plaintiff that construing the allegations in the complaint in his favor, there is an arguable distinction between his recognition that until the investigations into his activities were concluded, he could not clear his name of wrongdoing, and his being aware that he had a right to a name-clearing hearing, *per se*.

applicable here, before a person is deprived of either a liberty or property interest, he has a right to some kind of hearing. *Roth*, 408 U.S. at 570 n.7. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). However, defamation alone is not enough to invoke due process concerns. *Paul v. Davis*, 424 U.S. 693, 711 (1976). Some alteration of a right or status "previously recognized by state law," such as employment, must accompany the damage to reputation. *Id*. at 711-12; *see also Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997) (holding that as publication of defamatory comments complained of was not accompanied by the deprivation of any tangible interest such as continued employment, the publication did not deprive plaintiffs of a liberty interest); *Mertik*, 983 F.2d at 1361 (explaining that when a plaintiff alleges "loss, infringement or denial of a government benefit previously enjoyed . . . coupled with communications by government officials, having a stigmatizing effect, a claim for deprivation of liberty without due process of law will lie"). Consequently, when a "nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Chilingirian*, 882 F.2d at 205; *see also Roth*, 408 U.S. at 573 (explaining that "where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"); *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989) (explaining that due process concerns are implicated where public employer voluntarily disseminates false information in the course of a decision to terminate an employee). A name-clearing hearing is required only if the employer creates a false and defamatory impression about a particular employee in connection with his termination. *Id*.

This Court has identified five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing.

First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000) (citing *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997)).

"Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one." *Brown*, 214 F.3d at 723 (citing *Ludwig*, 123 F.3d at 410). It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process. *Brown*, 214 F.3d at 723. Thus, the public employer deprives an employee of his liberty interest without due process, if upon request for a name-clearing hearing, the employee is denied. *Id.*; *see also Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986) ("In order to succeed on his liberty interest claim, [plaintiff] must also prove that [defendant] improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal;" as widely publicized derogatory comments alone amount to no more than a defamation claim, which is not cognizable under the Constitution); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) ("A constitutional deprivation of liberty occurs when there is some injury to employment . . . in addition to damage to reputation *and a subsequent denial of procedural due process* [via a name-clearing hearing or the like] *to redress that injury*.") (emphasis added). As the Fifth Circuit pointed

of apprizing the employee that a right to a hearing exists. He essentially contends that by forcing a plaintiff to request a name-clearing hearing before bringing suit, when the employee may not have known of his right to such a hearing effectively constitutes a waiver of Plaintiff's rights. *See e.g., D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 188 (1972) (Douglas, J. concurring) (noting that a "heavy burden against the waiver of constitutional rights . . . applies even in civil matters"). He argues that the procedural due process right at issue in this case is no less worthy of protection against unknowing waivers than other constitutional rights. *But see Mertik*, 983 F.2d at 1362 (noting that the Supreme Court has narrowly construed the nature and scope of protected liberty interests) (citing *Siegert v. Gilley*, 500 U.S. 226 (1991)). In any event, this Court has never imposed an affirmative duty on an employer to apprize the employee of his right to a name-clearing hearing.

Despite Plaintiff's arguments to the contrary, we believe this case is indistinguishable from *Ludwig*. In that case, the Court noted that *Ludwig* had not claimed that "he was unaware he may be entitled to a name-clearing hearing because of the University's failure to give him notice of such a right." *Id*. at 410 n.10. In the instant case, Plaintiff does not claim in his reply brief that he was unaware of his right to a name-clearing hearing. He asserts instead that "in the absence of any evidence that the defendants fulfilled their obligation to provide notice of the right to a hearing or that [he] was aware of such right, such facts cannot be presumed in the context of a Rule 12(b)(6) motion." Plaintiff's Reply Br. at 3. However, *Ludwig* also was decided on a Rule 12(b)(6) motion to dismiss. Just as the plaintiff in that case did not claim he was unaware of his right to a name-clearing hearing, neither does Plaintiff in this case make such a claim. Despite the fact that to the extent we addressed the issue of the plaintiff's knowledge of his right to a name-clearing hearing in *Ludwig* at all, we expressly noted that the plaintiff in that case did not claim that he lacked such knowledge; Plaintiff in the instant case failed to allege that he did not know of his right to a name-clearing hearing. Moreover, even had

does require that an employee request a name-clearing hearing.[2]

Plaintiff is correct that our cases prior to *Ludwig* did not clearly impose a requirement on an employee to request a name-clearing hearing as a prerequisite to filing an action. *See e.g., Christian*, 888 F.2d at 416-17 (holding that plaintiff's liberty interest claim failed inasmuch as he failed to allege public disclosure of the stigmatizing comments made by defendants, with no discussion pertaining to plaintiff's need to request a name-clearing hearing). However, since *Ludwig*, which was decided well before Plaintiff filed his complaint, this Court has consistently held that a plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process. *See Brown*, 214 F.3d at 723; *see also Shealy v. Caldwell*, No. 99-3330, 2001 WL 873626, at * 7 (6th Cir. July 27, 2001) (holding that plaintiff's failure to request a name-clearing hearing was fatal to her claim); *McManamon*, 2000 WL 1888616, at *6 (holding that plaintiff failed to request a name clearing hearing and thus suffered no deprivation of her liberty interest, pursuant to *Ludwig*).

Plaintiff further contends that it is unfair to require plaintiffs to request a name-clearing hearing without first ensuring that the employer performed its "affirmative duty"

---

[2] Plaintiff claims that other circuits have determined that a plaintiff's failure specifically to request a name-clearing hearing is not fatal to a deprivation of a liberty interest claim. *See e.g., O'Donnell v. Barry*, 148 F.3d 1126, 1140 n.4 (D.C. Cir. 1998) (holding that a plaintiff's due process claims are not foreclosed because he fails "explicitly" to request a name-clearing hearing, "so long as it is reasonably clear that what the plaintiff complains of includes the lack of a hearing"); *Ersek v. Township of Springfield*, 102 F.3d 79, 84 n.8 (3d Cir. 1996) (refusing to reach the issue of whether a plaintiff must request a name-clearing hearing; and in any event, assuming that the letter plaintiff sent to the township before instituting his suit which claimed that he had not been afforded a chance to respond to false statements made about him sufficed as such a request). As we explain later, Plaintiff not only failed to request a name-clearing hearing, but failed adequately to apprize Defendants in any way that he sought an opportunity to respond to the charges brought against him.

out in *Selcraig*, the "fourteenth amendment provides only procedural protection against injury inflicted by state officers to the interest state employees have in their reputation." *Id*. Indeed, "the right to recover arises from the denial of a hearing to refute the charges . . . [thus], the extent of the publication would be relevant only to the amount of damages suffered." *Id*. at 797 n.10.

The purpose of a name-clearing hearing is to afford the aggrieved employee an "opportunity to be heard to refute the charges disseminated against him." *Ludwig*, 123 F.3d at 410. The hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures  to be valid." *Id*.

## A.    This Court requires plaintiffs to request a name-clearing hearing prior to bringing suit

Plaintiff argues that the law in this circuit is confusing and inconsistent with regard to a plaintiff's duty to request a name-clearing hearing when he attempts to bring a due process claim in connection with his liberty interest.  He contends that *Ludwig*, *Brown* and an unpublished decision by this Court, *McManamon v. Charter Township of Redford*, No. 99-2144, WL 1888616 (6th Cir. Dec. 19, 2000), yield inconsistent results.  We disagree.  First, this panel is not bound by *McManamon* inasmuch as that case is unpublished. *See United States v. Barnes*, 278 F.3d 644, 648 n.1 (6th Cir. 2002).   However, that case, *Ludwig* and *Brown* all consistently held that because of the failure of the plaintiffs in those cases to request a name-clearing hearing, their claims were barred.

In *Ludwig*, 123 F.3d 404, the plaintiff, a university basketball coach, brought a liberty interest claim after he was fired for repeatedly making offensive remarks to a foreign student on his team regarding his nationality and for other aspects of his performance as a coach. *Id*. at 406-07.  The plaintiff was ultimately terminated. *Id*. at 407.  Following that decision, the university's marketing department issued statements to the news media discussing the circumstances

surrounding the plaintiff's termination. *Id*. Some of the articles quoted university officials and contained allegations that the plaintiff had tried to persuade students on scholarship to transfer so that their scholarships could be used by other students. *Id*. The articles also discussed the plaintiff's alleged use of ethnic slurs. *Id*. The plaintiff filed suit alleging that the defendants had deprived him of both (1) a property interest, because he had been suspended without pay before he was terminated, and (2) his liberty interest, because the public statements issued regarding his termination were false. *Id*. The district court dismissed the Plaintiff's complaint.

Affirming the dismissal on grounds different than those relied on by the district court, this Court held that the plaintiff's failure to request a name-clearing hearing was fatal to his liberty interest claim. *Id*. at 411. The Court specifically held that a plaintiff is entitled to notice and opportunity to be heard in a name-clearing hearing when he requests a hearing. *Id*. at 410. In noting that a name-clearing hearing is required only if the plaintiff requests one, this Court cited two opinions from the Fifth Circuit. *Id*. at 410 (citing *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993); *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989), *rehearing granted and opinion reinstated in relevant part by*, 901 F.2d 61 (5th Cir. 1990)). The Court in *Ludwig* also noted that in "prior cases," the Fifth Circuit had "imposed a requirement upon the public employer that it make known to the employee that he may have an opportunity to clear his name upon request." *Ludwig*, 123 F.3d at 410 n.10 (noting that the Eleventh Circuit also imposes such a requirement) (citations and internal quotation marks omitted). However, this Court noted that "[i]n the instant case, Ludwig does not claim he was unaware he may be entitled to a name-clearing hearing because of the University's failure to give him notice of such a right." *Id*.

This Court again addressed the duty of an employee to request a name-clearing hearing in a suit alleging deprivation of a liberty interest in *Brown*, 214 F.3d 718. In that case, the

plaintiffs Gerald Brown and Nick D. Anderson were fired from their positions as a full-time police officer and a part-time reserve officer, respectively, after Brown pushed a city resident during the course of an investigation. *Id*. at 719-20. Anderson was officially terminated because he worked both for the fire and police departments, which the Niota board of commissioners, who made the employment decisions, determined to be a conflict of interest. *Id*. at 720. On February 12, 1998, the plaintiffs mailed a letter to Niota's mayor, requesting that she grant them a name-clearing hearing by February 16, 1998 and stating that if she did not respond by that date, they would take further action. *Id*. However, the plaintiffs filed suit before the mayor received their letter.

The plaintiffs in *Brown* asserted that they were denied both their property and liberty interests without due process of law by the termination proceedings conducted by the board of commissioners. *Id*. This Court rejected the plaintiffs' property interest claims by determining that they were at-will employees with no such interest in their employment. *Id*. at 721-22. The Court also rejected their liberty interest claims because although the plaintiffs clearly had requested a name-clearing hearing, the request had not been denied before they filed suit. *Id*. at 723. The Court held that before the plaintiffs could show they had been deprived of their liberty interests without due process, they would have to show they requested and had been denied a hearing. This they had not done, according to the Court. "At the time this complaint was filed, the plaintiffs had not suffered a deprivation of their liberty interest without due process of law because they had not been denied a name-clearing hearing by the city." *Id*.

These cases clearly explain that before asserting his liberty interest claim, Plaintiff was required to show that he requested a name-clearing hearing and was denied that hearing. *Brown*, 214 F.3d at 723; *Ludwig*, 123 F.3d at 410-11. While Plaintiff argues that a different standard may exist in some other circuits and that the Supreme Court has not addressed the issue, this Court has spoken on the issue and