NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0346n.06

No. 19-2190

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN STANTON; ROBIN STANTON, | ) | **FILED** |
| | ) | Jun 12, 2020 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| LEONARD WOODSIDE, individually and in his | ) | UNITED STATES DISTRICT |
| official capacity as Superintendent for Anchor Bay | ) | COURT FOR THE EASTERN |
| School District, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GILMAN, KETHLEDGE, and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. John and Robin Stanton, both of whom were school principals, resigned after their superintendent, Leonard Woodside, confronted John with allegations of sexual harassment. Woodside also allegedly told others—including John's new employer—about the allegations. The Stantons sued Woodside, claiming that he had deprived them of their professional reputations without first giving John a hearing. The district court dismissed their suit for failure to state a claim. We affirm.

We accept as true the facts alleged in the Stantons' complaint. *See Anarion Invs. LLC v. Carrington Mortg. Servs., LLC*, 794 F.3d 568, 569 (6th Cir. 2015). Pat Mikolowski worked as a security guard at Anchor Bay High School, where at some point she confiscated a wooden penis from a student and turned it over to the principal, John Stanton. In May 2017, Mikolowski decided

to leave her job at the high school. At her going-away party, in front of school staff, John jokingly gave her the wooden penis as a gift. On it he wrote: "To Pat – Hope your job isn't too hard!"

Shortly thereafter, in June 2017, John and his wife, Robin—also a principal, at nearby Anchor Bay Middle School—received poor performance reviews. Later that month, Superintendent Leonard Woodside explained to John that his poor review came in part because Mikolowski had complained about the gift. Woodside threatened to file publicly an administrative complaint against John for sexual harassment if he did not resign within 24 hours. John resigned. Robin then resigned as well because of the allegations against her husband and her own performance review.

The next month, Mikolowski called John and said that she had never complained about him. Instead, she said, Sherry Kenward, director of student services at Anchor Bay, had found out about the gift and confronted Mikolowski about it. Although Mikolowski had assured Kenward that she "had no issues with the gift," Kenward still told other Anchor Bay officials that Mikolowski had left her job because of the Stantons and that John's gift had upset and embarrassed her.

By August, however, John had secured a job with a different high school. But he resigned from that position after three days because, according to him, either Woodside or Kenward had called the new school and told them that John had been the subject of a sexual-harassment complaint at Anchor Bay.

The Stantons thereafter sued Woodside, Kenward, and Anchor Bay for various contract and tort claims in Michigan state court. The state court granted summary disposition to Anchor Bay and Woodside but denied it as to Kenward, who then appealed. *See Stanton v. Anchor Bay Sch. Dist.*, 2020 WL 91573, at *1 (Mich. Ct. App. Jan. 7, 2020).

Meanwhile, while Kenward's appeal was pending in state court, the Stantons sued Woodside again, this time in federal court. Their federal complaint alleged that Woodside had violated their rights to procedural due process, specifically by publicizing the sexual-harassment charges against John without first giving him a hearing to clear his name. The district court dismissed the suit, holding that res judicata barred the Stantons' claim or, alternatively, that the Stantons had failed to state a claim.

We consider first the district court's res judicata decision, which we review de novo. *See Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Woodside argues that res judicata applies because the state court already decided his liability as to the Stantons on these facts when it granted him summary disposition. Res judicata "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate." *Montana v. United States*, 440 U.S. 147, 153 (1979). State law determines the preclusive effect of a prior state-court action. *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015). Under Michigan law, res judicata prevents "multiple suits litigating the same cause of action" or a cause of action that could have been brought in a "prior action" that ended in a final judgment. *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).

Whether res judicata applies here depends on whether the Stantons' state suit against Woodside ended in a final judgment. Under Michigan law, an order granting summary disposition ordinarily qualifies as a final judgment. *See Sherrell v. Bugaski*, 425 N.W.2d 707, 709 (Mich. Ct. App. 1988). In cases with multiple defendants, however, a judgment as to one defendant is not final until the court issues an order "adjudicating all the claims and the rights and liabilities of all the parties[.]" *See* Mich. Ct. R. 2.604. Relatedly, a Michigan trial court remains free to revisit its prior orders, even those granting summary disposition, until it issues an order "adjudicating all the

claims and the rights and liabilities of all the parties" in the case. *See Yudashkin v. Linzmeyer*, 637 N.W.2d 257, 261 (Mich. Ct. App. 2001). Here, so far as the record shows, the Michigan court has entered judgment as to Woodside but not Kenward. Hence the court's order is not final and does not have any preclusive effect. *See Kosiel v. Arrow Liquors Corp.*, 521 N.W.2d 531, 534 (Mich. 1994).

The district court relied on *Rayfield v. American Reliable Insurance Co.*, an unpublished decision of this court, to suggest otherwise. *See* 641 F. App'x 533, 537 (6th Cir. 2016). Specifically, the district court cited *Rayfield* for the proposition that, under Michigan law, a "decision granting summary disposition is granted preclusive effect." That is true enough under Michigan law in a case where, as in *Rayfield*, the trial court grants summary disposition as to all the defendants in the case. But here the Michigan court granted summary disposition as to only one defendant (Woodside), leaving Kenward as a defendant in the case. And in that situation, a judgment as to one defendant is not final until the court issues an order "adjudicating all the claims and the rights and liabilities of *all* the parties[.]" *See* Mich. Ct. R. 2.604 (emphasis added). *Rayfield* is therefore inapposite.

That leaves the district court's decision that the Stantons failed to state a claim, which we likewise review de novo. *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006). The Stantons asserted only one claim in their federal complaint: that Woodside violated their procedural due-process rights when he stigmatized their reputations. The Stantons have a liberty interest in their "reputation, good name, honor, and integrity[.]" *See Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (citation omitted). The Due Process Clause of the Fourteenth Amendment ordinarily requires that the government provide "some kind of hearing" before it deprives a person of a liberty interest. *Id.* But harm to "reputation alone" is not enough "to invoke the procedural protection of

the Due Process Clause." *See Paul v. Davis*, 424 U.S. 693, 701 (1976). Instead, due-process "analysis is triggered only where the stigma of damage to a reputation is coupled with another interest, such as employment." *Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579, 581 (6th Cir. 2004). Thus, when a public employee "has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford [that employee] an opportunity to clear his name." *Quinn*, 293 F.3d at 320 (citation omitted).

The Stantons argue that Woodside did not give them a hearing to clear John's name and thus violated their due-process rights. To state a claim on this theory, however, the Stantons must plead (among other things) that they requested and were denied a hearing—for it is only "the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.* Yet the Stantons concede that they did not ask Woodside for a hearing. That omission is fatal to their claim. *See id.* at 324.

The Stantons say that any request for a hearing would have been "futile" and that—by misrepresenting Mikolowski's reaction to John's gift—Woodside "constructively prevented" them from requesting a hearing. But the Stantons cite no precedent that would allow them, on these grounds, to proceed on the specific due-process theory they invoke here.

The district court's judgment is affirmed.