NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0511n.06

Case No. 22-5404

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DANA SIMMONS, | ) | |
| Plaintiff-Appellant, | ) ) | |
| | ) | **FILED** |
| v. | ) | Dec 09, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |

DANA SIMMONS,

    Plaintiff-Appellant,

v.

ANDREW BESHEAR, GERINA
WHETHERS, RAY PERRY, in their
individual and official capacities,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

OPINION

Before: SUTTON, Chief Judge; GRIFFIN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. During the COVID-19 pandemic, the Kentucky Personnel Cabinet developed workplace safety policies for executive branch employees, including a mandatory, at-work mask policy at the time relevant here. Plaintiff Dana Simmons was a staff attorney working for the Kentucky Public Protection Cabinet during the pandemic. She was fired for not complying with the mask policy, and she brought a § 1983 suit alleging that Kentucky government officials violated her Fourteenth Amendment right to due process by enforcing the policy. But Simmons fails to allege facts to support her procedural due process claims. And it is not clearly established that the enforcement of an at-work COVID mask policy shocks the conscience. Thus, Defendants are entitled to qualified immunity.

No. 22-5404, *Simmons v. Beshear, et al.*

I.

In September 2020, the Kentucky Public Protection Cabinet hired Simmons as a staff attorney. The Public Protection Cabinet is the arm of the executive branch that ensures the safe and fair operation of Kentucky institutions.[1]

All was relatively well for Simmons, despite the COVID-19 pandemic, until two job-related changes came about in July 2021. First, Simmons transitioned from working remotely five days a week to working in person on Wednesdays and Fridays. The second change came from a memo circulated by the Personnel Cabinet's Secretary to all executive branch employees in response to the COVID-19 Delta variant. It required employees to wear a face covering in executive branch offices if another employee was present. So, in practice, employees had to wear face coverings in all common areas and during in-person meetings. The memo also warned: "Employees who do not comply with this policy may be removed from Executive Branch buildings/offices and may be subject to corrective or disciplinary action." (Am. Compl., ECF. No 33-1, Page ID 944.)

There is no dispute that Simmons did not comply. On September 21, 2021, the Deputy Commissioner of Simmons' department approached her and told her that she needed to wear a face covering while in common office areas. The next day, Simmons emailed her direct supervisor, Benjamin Seigel, and told him about the conversation. She wrote: "Simply put, I do not wear face coverings. I choose not to. I am of the belief that it is my prerogative to do so or choose not to do so." (Am. Compl., ECF. No 33-1, PageID 945.) She also questioned whether the executive branch could enforce this policy given that the Kentucky General Assembly "during the 2021 Special

---

[1] *Team Kentucky, Public Protection Cabinet*, https://ppc.ky.gov/ (last visited Nov. 28, 2022).

2

Session declined to [i]ssue a mask mandate." (Am. Compl., ECF. No 33-1, PageID 945.) Seigel responded, confirming that the policy applies to Simmons and noting that the policy "applies to Executive Branch employees only, no one else in the Commonwealth, so it does not conflict with the Legislature's decision not to impose a general mask mandate." (Am. Compl., ECF. No 33-1, PageID 942.)[2] More back-and-forth ensued, and Seigel offered to arrange a meeting between Simmons and anyone in the Office of Legal Services about the policy.

On September 24, 2021, Simmons met with the General Counsel for the Public Protection Cabinet, Ben Long, and the Manager of Human Resources, Jessica Van Sickel. The pair informed Simmons that she would not be permitted to come to the office on Wednesdays and Fridays if she didn't wear a face covering and that she wouldn't be permitted to take approved leave for those days. Simmons received an email and letter from Long summarizing what took place at the meeting, along with an appeal form. The email noted: "Any absence on those days due to non-compliance with cabinet policy may result in corrective or disciplinary action[.]" (Am. Compl., ECF No. 33-1, PageID 947.)

Despite this information, Simmons continued to defy the policy. And her defiance kicked off a series of stand-offs between Simmons and her higher-ups. On days where Simmons was scheduled to work, she would ask permission to enter the building. After confirming that she had no intention to abide by the policy, she would be directed to leave. This resulted in many days of unapproved leave and disciplinary action.

All told, Simmons was reprimanded once, suspended twice, and ultimately terminated. The September 30, 2021 written reprimand reminded her that she would be unable to enter the office

---

[2] It also applied to visitors to executive branch offices and buildings.

unless she abided by the policy and that failure to come in to work on Wednesdays and Fridays would "result in unauthorized leave without pay" and possible "disciplinary action." (Am. Compl., ECF No. 33-1, Page ID 958.) The letter also stated that she had a right to "respond to this reprimand in writing" and that a copy of her response would be placed in her personnel files. (Am. Compl., ECF No. 33-1, Page ID 958.)

On October 5, 2021, she was suspended for three days. The suspension letter noted that Simmons could appeal this action. She was again suspended on October 22, 2021, this time for five days, and was informed that she could appeal this action.

And finally, on November 8, 2021, she received an intent to dismiss letter. This came on the heels of more issues, including Simmons' failure to report for work on a few days and general inaccessibility. A pretermination hearing occurred on November 19, 2021, and her termination was effective on December 16, 2021.

Simmons, however, had filed suit, pro se, on October 22, 2021, long before her termination. Much of her complaint concerns the alleged unenforceability of the mask policy under Kentucky law. She alleges that a series of resolutions and bills that passed during the legislative sessions in 2021 "limit[ed] the Governor's emergency powers," including the Governor's ability to "impose requirements like a general mask mandate." (Am. Compl. ¶ 16, ECF No. 33, PageID 849.) And later in 2021, the Kentucky General Assembly declined to explicitly extend any executive order or administrative regulations for mask mandates. These measures, she contends, divested the executive branch of its authority to create and enforce the policy she challenges.

And because the Defendants disciplined her for her failure to abide by the policy, she continues, they violated her Fourteenth Amendment right to due process. Simmons makes three main arguments. First, Simmons alleges that she was deprived of a property interest in her

employment. Second, she alleges that she was deprived of a protected liberty interest in her "good name, reputation, honor, or integrity" when Defendants tarnished her "clean personnel record," with disciplinary actions, thereby reducing her future job prospects. (Am. Compl. ¶¶ 12, 43, ECF No. 33, PageID 848, 857 (citation omitted).) Third, Defendants violated her right to be free from "arbitrary" government action when the Public Protection Cabinet enforced the "illegal" COVID policy. (Am. Compl. ¶ 70, ECF No. 33, PageID 865.)

Defendants moved to dismiss, arguing that they are entitled to qualified immunity. The district court agreed with Defendants and granted the motion. And Simmons timely appealed.[3]

## II.

We review the denial of a motion to dismiss on qualified immunity grounds de novo. *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And in determining whether government officials are entitled to qualified immunity, we conduct a two-step inquiry. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). We can address these requirements in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

---

[3] In her complaint, Simmons requested both monetary damages and equitable relief. Qualified immunity would not bar the latter. *See Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 302 (6th Cir. 2019). But as we discuss below, her claims for equitable relief are now moot.

III.

Before turning to the merits, we will briefly address some jurisdictional disputes. The first involves what relief Simmons can obtain, given that she is a former employee and that the mask mandate has now been repealed. Simmons argues that she can obtain injunctive relief against Defendants in their official capacities under the *Ex Parte Young* exception to sovereign immunity. And she originally requested that Defendants be "enjoin[ed] . . . from enforcing . . . or otherwise requiring compliance with the Face Covering Policy[.]" (Am. Compl., at 24, ¶ 2, ECF No. 33, Page ID 868.)

At the time Simmons filed suit, she was a state employee. In her original complaint, she requested preliminary equitable relief to stop the state from enforcing the mask mandate. The district court denied that relief shortly after she filed suit and she took an interlocutory appeal. Before we could adjudicate that appeal, however, the district court dismissed her case entirely. *Simmons v. Beshear*, No. 3:21-CV-052, 2022 WL 1434644 (E.D. Ky. May 5, 2022). So the denial of preliminary relief merged into that final judgment. In addition, the governor rescinded the mask mandate in February 2022. *Simmons v. Beshear*, No. 21-6034, 2022 U.S. App. LEXIS 18264, at *4–5 (6th Cir. June 30, 2022). Thus, we dismissed her interlocutory appeal as moot. *Id*. at *5.

Although her briefing is unclear on whether she still seeks equitable relief, any request for that relief is moot. After she filed this suit, Simmons was terminated, making her request to enjoin the enforcement of the policy—and any prospective relief—moot. *See Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 801 (6th Cir. 1998) (vacating an injunction involving employee's job duties because the employee was no longer employed); *cf. Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) ("[C]laims for reinstatement are prospective in nature and appropriate subjects for *Ex Parte Young* actions." (citation omitted)). In addition, the mask mandate has been

6

lifted without any reason to believe that it will be re-imposed, which also moots this part of her case. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc). [4]

So, to sum it up, we will analyze whether Simmons successfully brought claims, in her capacity as a former employee, against Defendants in their individual capacities for money damages.

The other preliminary dispute involves standing. Simmons has standing to sue as a former employee of the State. But Simmons challenges the district court's determination that she lacks standing to sue as a visitor to State buildings and offices. Recall that the policy at issue applies to employees and visitors of executive branch offices and buildings.

We're all familiar with the three elements to standing. "The plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (citation omitted). "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Id*.

Simmons lacks standing to sue as a visitor because she doesn't allege that she was, or would imminently be, injured as a visitor. She alleges that, as an employee, she could not work at the office on Wednesdays and Fridays because she refused to comply with the policy. And she alleges injuries flowing from that reality. (Am. Compl. ¶ 12, ECF No. 33, PageID 848 ("Defendants have caused injury-in-fact to Plaintiff including economic injury . . . [and] damage to Plaintiff's good name and reputation in that Plaintiff's personnel record is now full of disciplinary sanctions[.]").) She was not a visitor at her place of work. Nor did she allege that she

---

[4] This also resolves her argument that Defendants impliedly consented to suit.

intended to visit her former place of work or any other executive branch buildings as a visitor. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (injury must be "actual or imminent, not conjectural or hypothetical" (citation omitted)); *Buchholz*, 946 F.3d at 865 (future harm must be "'certainly impending'" (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). So Simmons only has standing to challenge the policy as a former employee.

IV.

A. Property-Interest Claim

We now turn to the merits. To start, we'll address Simmons' claim that she was deprived of a constitutionally protected property interest in her employment with the Public Protection Cabinet without due process.

There are two steps in this inquiry. First, Simmons must establish that she had a protected property interest in her position at the Public Protection Cabinet. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 620 (6th Cir. 2013). Second, if a constitutionally protected property interest is at play, we must determine whether Simmons was "afforded the procedures to which government employees with a property interest in their jobs are ordinarily entitled." *Id.* (citation omitted).

Here, Simmons has a constitutionally protected property interest in her position at the Public Protection Cabinet. (Appellees Br. at 18 (citing Ky. Rev. Stat. § 18A.095(1)).); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (noting that property interests can be created by independent sources such as state law); *Williams v. Kentucky*, 24 F.3d 1526, 1537–38 (1994) ("Statutes providing that state employees cannot be discharged or demoted without

8

cause clearly give the employee a protected property interest in continued employment."). She therefore passes step one.

But Simmons fails to allege that she wasn't afforded proper process. Under the Fourteenth Amendment, employees with constitutionally protected property interests have a right to notice and a pretermination hearing before being deprived of their property interest. *See Kuhn*, 709 F.3d at 620. Simmons doesn't allege any notice that she received was constitutionally deficient. In fact, her Complaint details how Defendants continuously provided Simmons with written notice of the potential outcome of her actions, *see, e.g.*, (Am. Compl., ECF No. 33-1, PageID 947 (warning that absence "due to non-compliance with cabinet policy may result in corrective or disciplinary action")), and her Complaint shows that she was notified of her procedural rights when disciplinary action was taken, *see, e.g.*, (Am. Compl., ECF No. 33-1, PageID 970 (suspension letter noting that she could appeal this determination).) And Simmons received a pretermination hearing on November 19, 2021, before her eventual termination on December 16, 2021.

Simmons pushes back in two ways. First, she argues that she shouldn't have faced disciplinary action because Defendants did not have authority to enact and enforce the policy. In other words, she disagrees with being subject to "process" in the first place. But this argument is misplaced because it hinges on the "reason for [her suspension] and ultimate termination," which is "not a consideration relevant to" whether she had "constitutionally adequate notice . . . and an opportunity to respond." *Kuhn*, 709 F.3d at 623. Simply put, this is an argument about the merits of the policy disguised as an argument about what process is due. We can't entertain that here.

And her second argument, that Defendants didn't follow proper procedures and violated Kentucky state law when putting the policy in place, suffers from the same problem. *See Anderson v. Ohio State Univ.*, 26 F. App'x 412, 414 (6th Cir. 2001) (allegations of a violation of a state's

formal procedure do not, on their own, establish a cognizable due process violation) (citing *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)).

Her two arguments suffer from another related problem. They both stem from her belief that "Appellees have violated established State law." (Appellant Br. at 12; *id*., pp. 12-19.) This simply isn't the forum for those arguments. *See Huron Valley Hosp. Inc v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (A § 1983 claim is "limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law."); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

Ultimately, nothing defeats the fact that she was afforded notice and an adequate hearing. We find that Simmons did not allege a violation of her right to procedural due process under the Fourteenth Amendment based on a property interest in her employment.

## B. Liberty-Interest Claim

Simmons contends that Defendants deprived her of her liberty interest in her "good name, reputation, honor, or integrity" by issuing written reprimands and suspensions, and by ultimately terminating her. (Appellant Br. at 19 (citation omitted).)

The Due Process Clause of the Fourteenth Amendment protects Simmons' liberty interest in her "'reputation, good name, honor, and integrity.'" *Crosby v. Univ. of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017) (citations omitted). Generally, that liberty interest "is impugned when a state actor stigmatizes an individual by means of voluntary, public dissemination of false information about the individual." *Id*. (cleaned up). To that end, Simmons must allege facts sufficient to establish the following: (1) that Defendants made "stigmatizing statements" in conjunction with her termination; (2) that those statements alleged more than "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance"; (3) that the "stigmatizing

statements" were "made public"; (4) that "the charges made against [her] were false"; and (5) that "the public dissemination [was] voluntary." *Id*. If she established all five elements, she would be entitled to a name-clearing hearing. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (citation omitted). "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Id.* (citation omitted).

With all of this in mind, Simmons does not plead enough facts to establish that she has a constitutionally protected liberty interest. She's never denied that she intentionally violated the mask mandate, which led to the disciplinary action. So even if any statements in her record are "stigmatizing" (which they likely aren't), they don't allege anything beyond inadequate performance, and they aren't false. And although she alleges that the written reprimand, suspensions, and termination tarnished her "clean personnel record," (Am. Compl. ¶ 12, ECF No. 33, PageID 848.), she does not allege that Defendants made her employment record or its contents public. *Cf. Crosby*, 863 F.3d at 555 (involving a dean who gave stigmatizing statements at a faculty meeting); *Quinn*, 293 F.3d at 318 (involving a plaintiff who alleged that "city and county officials publicly issued disparaging statements").

Finally, she alleges that finding new employment might be challenging given the reason for her termination, but a charge that "merely makes a plaintiff less attractive to other employers" doesn't implicate a liberty interest. *Crosby*, 863 F.3d at 556 (citation omitted). We find it unlikely that Defendants "imposed upon [her] a moral stigma such as immorality or dishonesty capable of seriously damaging [her] standing and associations in the community[.]" *Id.* at 556 (cleaned up). But we need not decide that because she needs to allege facts that would support all five elements of this liberty-interest claim to be entitled to any process. And she has not. So her liberty-interest claim fails.

C.  Arbitrariness Claim

Finally, Simmons argues that Defendants' "enforcement" of the mask policy "rises to the level of '*abusive executive action*' *that is arbitrary, oppressive, and which* '*shocks the conscience*.'" (Am. Compl. ¶ 70, ECF No. 33, PageID 865 (citation omitted).)

One liberty interest protected by substantive due process is "the right not to be subjected to arbitrary and capricious government action that 'shocks the conscience and violates the decencies of civilized conduct.'" *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). "[T]he measure of what is conscience shocking is no calibrated yard stick," nor is it "subject to mechanical application." *Lewis*, 523 U.S. at 847, 850. But "[o]ver the years, the courts have used several tropes to explain what it means to shock the conscience." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014). For example "[d]ue-process-violative conduct . . . 'shocks the conscience,' infringes upon the 'decencies of civilized conduct,' is 'so brutal and so offensive to human dignity,' and interferes with rights 'implicit in the concept of ordered liberty.'" *Guertin*, 912 F.3d at 923 (citation omitted). "The quintessential example of 'conscience-shocking' behavior arose in the physical-force context: A police officer directed a doctor to pump a suspect's stomach to obtain illicit drugs as evidence." *Golf Vill. N. LLC v. Cnty. of Powell*, 42 F.4th 593, 601 (6th Cir. 2022) (citing *Rochin v. California*, 342 U.S. 165, 172–73 (1952)).

This example puts into perspective why Simmons' claim is unconventional. She's alleging that her employer's decision to enforce a COVID policy was arbitrary in the constitutional sense. Yet she cites no case law that establishes that this "shocks the conscience." And in order to overcome a defendant's assertion of qualified immunity, a plaintiff must show that her asserted

right is "clearly established." *See Wesby*, 138 S. Ct. at 589 (citation omitted). Because Simmons fails to do so, Defendants are entitled to qualified immunity.[5]

And to the extent that Simmons alleges that the policy violated state law, these claims are not cognizable, as we've explained above. *See supra* p. 11.

V.

For these reasons, Defendants are entitled to qualified immunity, and the decision below is affirmed.

---

[5] Sometimes our Court requires plaintiffs to establish both "an underlying constitutionally-protected right" and conscience-shocking behavior; and other times, we have treated these two elements as separate ways to state a substantive due process claim. *Range*, 763 F.3d at 589 (noting the conflict in our cases); *see EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 861–62 (6th Cir. 2012) (collecting cases). But because we resolved Simmons' claim on the clearly established prong, we need not consider this conflict.